In the Matter of MARATHON FOUNDRY AND MACHINE COMPANY, a corporation, Debtor.

MARATHON FOUNDRY AND MACHINE COMPANY, Debtor-Appellant,

v.

Joseph SCHWARTZ and Francis J. Curtis, Trustees of Marathon Foundry & Machine Company, a corporation, Appellees.

No. 11534.

United States Court of Appeals
Seventh Circuit.

Dec. 22, 1955.

Rehearing Denied Jan. 18, 1956.

M. Robert Sturman, Bernard Sang, Allan R. Bloch and Vincent J. Carney, Chicago, Ill., for debtor-appellant.

Henry S. Blum, Francis S. Clamitz, Chicago, Ill., Manuel E. Cowen, Martin S. Gerber, Chicago, Ill., of counsel, for trustees-appellees.

Before MAJOR, FINNEGAN and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Debtor has appealed from an order of the district court entered May 27, 1955, directing appellees to sell, for $910,129.-58, to Intelectron, Inc. 32,126 shares of the capital stock of Bethlehem Foundry & Machine Co., a Pennsylvania corpora-

tion, which stock is an asset of debtor, but which is subject to liens aggregating $500,000 more or less.

An involuntary petition in bankruptcy was filed against debtor on April 30, 1953. Debtor filed its voluntary petition for reorganization under chapter X of the bankruptcy act[1] on May 20, 1953. Said petition was approved as filed in good faith and thereafter appellees were appointed trustees in the reorganization proceedings. In addition to its Bethlehem stock, debtor's assets consisted of a manufacturing plant and equipment at Wausau, Wisconsin[1a], controversial claims against various individuals and indirectly against the United States aggregating about $350,000, and thereafter a fund of approximately $165,000 held by Chicago Title and Trust Company, pursuant to order of court, to insure payment of certain tax and lien claims, and a small amount of cash accumulated by the trustees as a result of the operation of the debtor. The Bethlehem holdings constitute about 70 per cent of Bethlehem's outstanding stock.

On March 14, 1955, the trustees filed a petition in the district court, requesting instructions. At that time no plan of reorganization had been filed. They advised the court that it would be to the best interests of all parties that the Bethlehem stock be sold to the best and highest bidder; that they had no funds with which to redeem the stock, which was held by secured creditors; that such sale would make it possible to pay such secured creditors in full and to realize an additional sum to assure the general creditors a substantial amount, while still leaving the other assets of the debtor to be the subject of a plan of reorganization. The trustees further represented that they had been able to obtain an offer of about $800,000 for said stock, free and clear of any lien.

On March 14, 1955, the district court entered an order that all parties in interest show cause' why such sale should

[1]. 11 U.S.C.A. § 501 et seq.

[1a]. Subject to a lease, expiring April 30, 1957, executed by the trustees pursuant to order of the court below.

not be made. The court by said order also appointed an appraiser to fix the value of the Bethlehem stock, and called for bids.

The district court on April 1, 1955 ordered, *inter alia* that the trustees should file by July 20, 1955 a plan of reorganization or report their reasons why a plan could not be effected.

On April 22, 1955, the debtor, "by Jacob Dyner," filed written objections to the proposed sale of the Bethlehem stock on the following grounds: (1) no plan of reorganization had been approved, (2) the stock was the principal asset of the debtor and there was no showing of any emergency to justify its sale otherwise than in pursuance of a plan of reorganization, and (3) said sale would make impossible the reorganization of the debtor.

On April 25, 1955 the appraiser fixed the value of the stock at $775,521.64.

Pursuant to notice a referee in bankruptcy, beginning April 25, 1955, heard evidence in support of and against the petition, and on that day bids were received, the highest and best bid being that of Intelectron, Inc., for $910,129.58.

By an amended objection debtor submitted at the adjourned referee's hearing of May 9, 1955 a letter from A. J. Armstrong Co. It was dated April 20, 1955, and addressed to Jacob Dyner who, according to the letter, had represented to Armstrong that he was the sole owner of all outstanding Marathon stock. By this letter Armstrong offered to make a loan to Marathon in a sum not to exceed $975,000, to "be evidenced by a promissory note of Marathon and other instruments and agreements containing such terms, conditions, interest rates and maturity as shall be mutually agreeable to you, Marathon, and Armstrong." It was conditioned, *inter alia*, on an undertaking by Marathon to pledge its Bethlehem stock on the loan. The letter bore the notation "the foregoing agreement is hereby accepted:" followed by Dyner's signature. Debtor informed the court of a later telegram to Dyner from Armstrong, which said: "Such loan to be made by Armstrong shall be evidenced by a promissory note of Marathon, and by the usual form of loan and security agreement—."

Both the referee and the district court overruled the objections filed by the debtor. By order of May 27, 1955 (entered *nunc pro tunc* as of May 9, 1955), which is the order appealed from, it was provided, *inter alia*, that the said stock should be sold unless (a) suggestions for a plan assuring to the estate and creditors thereof a greater return than the bid of Intelectron, Inc., with security for the consummation thereof, were filed by June 24, 1955 [2]; or, (b) there shall have been deposited by May 20, 1955, sufficient funds to discharge all of the debts of the debtor and costs of administration; or (c) the trustees shall have filed by July 20, 1955, their plan of reorganization providing for retention or other disposition of the Bethlehem stock.[3]

---

2. This time was extended until July 11, 1955 on motion of the debtor.

3. The order of May 27, 1955 contains findings, including the following:

"That Metals Disintegrating Co., a corporation, has heretofore made an offer to purchase said 32,126 shares of Bethlehem Foundry & Machine Co. stock for $25.00, per share; that said offer was accompanied by an earnest money deposit of $50,000;

"That various other competitive bids were made at said hearing, the highest and best bid being that made by Intelectron, Inc., for $28.33, per share, which produced a total offer of $910,129.58;

that said offer was made in writing, subject to certain conditions and limits in time for final consummation to September 1st, 1955; that said offer was accompanied by a certified check delivered to the trustees in the sum of $50,000;

"That trustees herein have stated, in their opinion, the conditions contained in the offer of Intelectron, Inc., can be fulfilled;

\* \* \* \* \*

"That it appears that the debtor has a substantial equity in said Bethlehem stock which will become available upon sale for either distribution or for a plan of reorganization;

"That it is in the best interests of the

None of these events has occurred.

The only plan presented was that filed by the trustees on July 20, 1955. Said plan recognized the sale of the 70 per cent interest in Bethlehem to Intelectron, Inc., for the sum of $910,129.58, and provided for the use of the equity derived therefrom, and for the placing of the remainder of the assets of the debtor in a new company to be formed. No court action appears to have been taken on this plan.

On July 28, 1955, the district court entered an order finding that no plan had been filed by any one but the trustees, and again directing the trustees to consummate the sale of Bethlehem stock to Intelectron, Inc. for the sum of $910,-129.58, in accordance with the order of May 27, 1955.

Intelectron, Inc. has agreed to extend the date of consummation of the sale until December 31, 1955.

In this court debtor contends: (1) in the absence of an emergency, a bankruptcy court may not order the sale of the principal asset of the debtor unless made in pursuance of a plan of reorganization; (2) to authorize such sale, the court must find as a fact based upon evidence that an emergency existed involving imminent danger of loss of the assets if the sale be not consummated; (3) the primary duty for the formation of a plan of reorganization rests with the trustees under chapter X proceedings; and (4) the primary purpose of reorganization proceedings is to effect reorganization of the debtor—not to liquidate its assets.

■ 1. On oral argument before us, debtor's counsel emphatically asserted that the district court lacked power to authorize and approve the sale of the Bethlehem stock to Intelectron.

Included in chapter X, dealing with corporate reorganizations, are several pertinent provisions.

Section 111 [4] provides:

"Where not inconsistent with the provisions of this chapter, the court in which a petition is filed shall, for the purposes of this chapter, have exclusive jurisdiction of the debtor and its property, wherever located."

Section 126 [5] provides:

"A corporation * * * may * * * file a petition under this chapter."

Section 115 [6] provides:

"Upon the approval of a petition, the court shall have and may, in addition to the jurisdiction, powers, and duties hereinabove and elsewhere in this chapter conferred and imposed upon it, exercise all the powers, not inconsistent with the provisions of this chapter, which a court of the United States would have if it had appointed a receiver in equity of the property of the debtor on the ground of insolvency or inability to meet its debts as they mature."

Section 116 [7] provides:

"Upon the approval of a petition, the judge may, in addition to the jurisdiction, powers, and duties in this chapter conferred and imposed upon him and the court—* * * authorize * * * a trustee * * *, upon such notice as the judge may prescribe and upon cause shown, to

estate herein that said stock in Bethlehem Foundry & Machine Co. be sold upon the terms and conditions hereinafter set forth to Intelectron, Inc., for the sum of $28.33, per share;

"That June 24, 1955 has been fixed as the date by which creditors or stockholders may submit to the trustees suggestions for the formulation of a plan, or proposals in the form of plans;

"That it is in the best interests of this estate and the creditors thereof that the benefits attainable by the acceptance of the offer of Intelectron, Inc., be not lost because of the failure of parties herein to propose a fair and equitable plan which will insure, upon approval, acceptance and confirmation to the creditors of this estate, at least as great a return as the offer of Intelectron, Inc., will produce."

4. 11 U.S.C.A. § 511.

5. Ibid, § 526.

6. Ibid, § 515.

7. Ibid, § 516.

* * * sell any property of the debtor, whether real or personal, upon such terms and conditions as the judge may approve".

The question of the power of the district court to order the sale must be resolved in the light of the circumstances existing in this case on May 9, 1955. At that time no plan of reorganization of debtor had been submitted to the court by anyone. The Bethlehem stock was owned by debtor but was not used in the conduct of its business, the revenue of which was derived from a factory under lease expiring April 30, 1957. The stock was severally held as collateral security by Louis Dreyfuss, Morris Wolf and Albert J. Grosser Co. We were told upon oral argument by Dreyfuss' counsel that Dreyfuss is entitled to accruing interest at a rate which, his counsel says, is a matter of dispute, either 8 per cent per annum as Dreyfuss contends, or 6 per cent per annum as the trustees contend. On May 9, 1955 the amount due to Dreyfuss was about $226,000, the amount then due Grosser was about $240,000 and the amount due Wolf was about $58,000. The trustees had not sufficient funds with which to redeem the pledged stock.

Under these circumstances, we hold that the district court had power, under the statutory provisions above quoted, to enter the order from which an appeal has been taken. Frank v. Drinc-O-Matic, 2 Cir., 136 F.2d 906.

■ 2. The district court, having power to order the sale of the Bethlehem stock belonging to the debtor, was required to consider the existing circumstances and exercise its discretion as to whether a sale should be ordered and, if so, upon what terms and conditions. In addition to the circumstances hereinbefore set forth, upon which the power of the court to act was based, the following additional facts appear from the record. Debtor had by its petition invoked the jurisdiction of the court in a reorganization proceeding; about two years had elapsed since the filing of that petition, during which time no plan of reorganization had been submitted to the court but during which time heavy interest charges had accrued upon the debtor's loan for which the stock had been pledged; the secured creditors possessed a power of sale of the stock pledged which they were prevented from exercising by the pendency of the reorganization proceeding; proper notice of the proposed sale was given to all persons concerned; no creditor objected; an appraiser appointed by the court fixed the value of the stock at $775,521.64; Metals Disintegrating Co. had made an offer amounting to $803,150; Intelectron, Inc. had made a bid for the stock in the sum of $910,129.58 in cash; neither debtor nor Dyner, its sole stockholder, had made any bid; and the sale, if consummated at the price bid by Intelectron, would pay the secured creditors in full and leave a substantial balance for expenses of administration and general creditors.

■ In view of these circumstances the district court, in the exercise of its discretion, authorized the sale. We are not at liberty to substitute our discretion for that of the district court. Frank v. Drinc-O-Matic, supra. We should reverse the order appealed from only if we are satisfied that the court in entering it was guilty of an abuse of discretion.

■■ The burden is on the debtor to establish an abuse of discretion. Kimmel v. Crocker, 10 Cir., 72 F.2d 599, at page 601. It relies heavily upon the so-called Armstrong offer, contained in a letter to Dyner submitted at the referee's hearing of May 9, 1955. This letter suggested a loan by Armstrong to Marathon but required that it be evidenced by the debtor's note "and other instruments and agreements containing such terms, conditions, interest rates and maturity as shall be mutually agreeable to you, Marathon, and Armstrong." It will be noted that not only is the nature of the "other instruments and agreements" left undefined, but also that the letter leaves unsettled such vital essentials as the terms, conditions, interest rates and maturity, postponing such matters to subsequent agreements, if any, among Dyner, debtor and Armstrong.

Whether or not there would ever be a meeting of the minds on these important matters was on May 9, 1955 uncertain. Moreover, in a period of over two years in which the debtor's property and business had been in the bankruptcy court, this was the only suggestion which either it or Dyner had submitted to the court for ending the proceedings there. Debtor's counsel, although apparently imbued with a belief in the efficacy of the Armstrong offer, in this court characterized it rather weakly as "an offer of a loan which might have had the effect of allowing the debtor to continue as a going concern."

In view of these facts, we cannot find that the district court was guilty of an abuse of discretion in ordering that the sale to Intelectron be consummated.

For the reasons hereinbefore set forth, the order from which an appeal has been taken is

Affirmed.