In the Matters of WEBCOR, INC., an Illinois corporation et al., Bankrupt,

Webcor Sales Company, a New Jersey corporation et al., Bankrupt.

Nos. 16572–16577.

United States Court of Appeals
Seventh Circuit.

Feb. 7, 1968.

Rehearing Denied March 14, 1968.

Leonard Gesas, Lawrence M. Cooper, Melvin E. Levinson, Robert M. Woodward, Norman H. Nachman, Chicago, Ill., for appellants.

Miles G. Seeley, Milton L. Fisher, Louis I. Kessler, William S. Collen, Mark A. Greenhouse, Chicago, Ill., Arnold M. Quittner, Los Angeles, Cal., Wayne W. Whalen, Chicago, Ill., for appellee Dynamics Corporation of America; Cravath, Swaine & Moore, New York City, Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., of counsel. Collen & Kessler, Chicago, Ill., of counsel for appellee Frank M. Whiston, Receiver, now trustee in bankruptcy, appellee.

Norman H. Nachman, Chicago, Ill., for Intervenors Webcor, Inc. and Webcor Sales Co.; Gerald F. Munitz, Allan G. Sweig, James L. Nachman, Chicago, Ill., of counsel.

Before KILEY, SWYGERT, and CUMMINGS, Circuit Judges.

SWYGERT, Circuit Judge.

In these appeals, certain creditors and shareholders of Webcor, Incorporated and Webcor Sales Company, bankrupts,[1] primarily challenge orders of the Referee in Bankruptcy both refusing to set aside an order of adjudication and to reinstate Chapter XI proceedings and confirming the sale of the bankrupts' assets to International Fastener Research Corporation (hereafter I.F.R.C.).[2] The principal question posed by the appellants is

---

1. Webcor, Incorporated owned all of the issued and outstanding shares of Webcor Sales Company. In these proceedings, the two companies have been treated as a single entity.

2. There are six appeals before the court comprised of two identical sets of three appeals from certain orders of the district court entered in the bankruptcy proceedings of Webcor Incorporated and Webcor Sales Company.

whether the referee abused his discretion in proceeding to liquidate these corporations in bankruptcy rather than allowing them to attempt to effect a proposed plan of arrangement pursuant to Chapter XI. On the motion of the appellants, we granted an injunction *pendente lite*, restraining I.F.R.C. from in any way taking possession or disposing of the bankrupts' asset pending the outcome of these appeals. The bankrupts were granted leave to intervene and the hearing of the cases was expedited.

On July 5, 1967, Webcor, Incorporated and Webcor Sales Company filed petitions for an arrangement pursuant to Section 322 of Chapter XI of the Bankruptcy Act, 11 U.S.C. § 722. No plan accompanied the petitions. The following day a receiver was appointed to manage their property. On October 12, 1967, the referee entered an *ex parte* order directing the corporations to file a plan of arrangement by October 25, 1967 and setting a hearing for that date to consider whether to enter an order pursuant to Section 376(2) of the Bankruptcy Act, 11 U.S.C. § 776(2), either adjudging them bankrupts or dismissing the Chapter XI proceedings. After notice to the parties, the receiver filed a petition with the referee on October 17, 1967 reciting an offer to purchase all of the corporations' assets for $1,030,000 and requesting a sale on return of bids. The referee entered an order on the same day authorizing solicitation of bids to be returned on November 6, 1967, fixing $1,030,000 as the upset price, and appointing appraisers.[3]

Because no plan of arrangement had been filed before the October 25 hearing, the referee entered orders adjudicating the corporations bankrupts on that date. Although the creditors' committee raised no objection to requests "to delay entering an order of adjudication until November 6th" to give the corporations additional time to file a plan, the receiver's counsel informed the referee that their business had been closed for almost four months, that amounts in excess of $25,000 a month were being expended to preserve the assets of the estates, and that any delay might jeopardize the firm bid already received. At that time, the referee said: "I am going to enter an order of adjudication on the failure to present a plan, * * * And if between now and November the 6th a plan can be formulated that would deserve consideration, why we will consider it."

On November 2, 1967, the bankrupts filed a proposed plan of arrangement. The plan provided for full payment in cash of the costs of administration; full payment in cash of all claims and obligations incurred after July 5, 1967; full payment in cash of all claims entitled to priority under the Bankruptcy Act; full payment in cash of general unsecured claims in the amount of $100 or less; fifty per cent payment in cash of general unsecured claims in excess of $100 in six installments over a five-year period. All of the funds necessary to consummate the plan were to be provided by A. F. Dormeyer Corporation. In addition, the Dormeyer Corporation agreed to supply $750,000 in working capital and to issue 200,000 shares of its common stock to Webcor, Incorporated, receiving seventy-nine per cent of Webcor, Incorporated common stock in return.

On the morning of November 6, the bankrupts filed identical motions with the referee, praying for an order vacating the October 25 order of adjudication, reinstating the Chapter XI proceedings, and deferring "any action on any of the bids which may be made in the course of the hearing set for November 6, 1967." At the hearing on the motions that morning, the bankrupts' counsel advised the referee that he had discussed the proposed plan with the creditors' committee and suggested that any action on the bankrupts' motions be deferred "until the bids have been taken this afternoon to see what the highest bid is that

---

3. The appraisers value the bankrupts' real and personal property at $1,081,422.33, filing their report on November 3, 1967.

is made in this Court, \* \* \*" One of the counsel for the creditors' committee informed the referee that although there existed an ambiguity in the plan's language and a "question of evidence of [Dormeyer's] ability to pay," the committee had no objection to delaying the consideration of the bankrupts' motions. The referee agreed to follow the suggestion, deferring any action on the motions until the completion of the bidding.

When the hearing reconvened on the afternoon of November 6, spirited bidding took place. I.F.R.C., the original bidder, registered the high bid of $1,775,000. One of the counsel for the creditors' committee, who stated that "a representative group" of the committee was present, requested a recess to consider the bid and the plan on file together with an apparent modification of the plan proposed by counsel for Dormeyer just prior to the close of bidding. Counsel for the bankrupts then elaborated with respect to the modification, representing that Dormeyer was prepared to make $1,800,000 available that afternoon or the next morning. Upon determining that the $1,800,000 was not a bid by Dormeyer, but rather represented funds to "implement the plan," the referee suggested that counsel for the bankrupts, Dormeyer, and I.F.R.C. get together with the creditors' committee and the receiver to discuss these recent developments.

After a recess, the hearing reconvened. One of the counsel for the creditors reported to the referee that after talking to the various interests, "we decided \* \* \* to take a vote. \* \* \* The vote was \* \* \* by a majority, that we do business with a bidder under the bankruptcy sale, and that we reject all further dealings with the debtor under a plan." [4] He also informed the referee that I.F.R.C. had increased its bid to

$1,825,000 and recommended acceptance. "On the recommendation of the creditors' committee," the referee accepted I.F. R.C.'s bid of $1,825,000. The following day, the referee entered two orders: one denying the motions of the bankrupts to vacate the order of adjudication and to reinstate the Chapter XI proceedings, the other approving and confirming the sale of the assets to I.F.R.C.

Petitions for review of these orders were filed by the appellants on November 15, 1967. On November 16, they applied to the referee for a suspension of his November 7 order confirming the sale until the petitions for review were disposed of. In an order entered the same day, the referee denied the application. On November 17, 1967, the appellants filed both a petition to review that order and a petition to stay the execution and enforcement of the November 7 orders.

Both the petitions for review and the petition to stay came before the district judge on November 20, 1967. After lengthy argument during which the bankrupts' counsel indicated that an amended plan was being prepared, the district judge denied both the petition to review the referee's order denying the application to suspend and the petition to stay the execution and enforcement of the November 7 orders.[5] With respect to the amended plan and the petitions to review the November 7 orders, the judge stated:

The matters before me this morning for decision I will now decide, and then I will re-refer the matter to the Referee as to the petition that was brought in here this morning: First of all, the petitions to vacate and set aside various orders of the Referee, \* \* \* are each and all denied. \* \* \* [6] The Chapter 11 proceed-

---

4. It appears from the record that counsel for the bankrupts and Dormeyer in fact met with the committee.

5. The order of the district court, denying the petition for a stay, is the subject of two identical appeals. Because the appellants' and the bankrupts' obtained a stay

pursuant to orders of this court entered on December 4 and December 12, 1967, these appeals are now moot.

6. This order of the district court, affirming the two orders of the referee entered on November 7 (denying the motion to vacate the order of adjudication and to

ings and the bankruptcy proceedings, including the petition of the parties for vacation of the order of adjudication and approval of a plan, as presented this morning, are hereby re-referred to the Referee with full authority to proceed under the provisions of the Chapter 11.

Two hearings were held before the referee, one on the afternoon of November 20 and the other on the following morning. During the course of the afternoon hearing, the amended plan of arrangement was filed. During the hearing the next morning, the bankrupts filed an application to vacate and reconsider the orders of November 7 which was denied after a hearing.[7] On that afternoon, the parties again appeared before the district judge on a combined motion of the appellants to obtain the setting of a supersedeas bond and a stay of all proceedings for ten days. This motion was denied after a lengthy hearing. In closing, the district judge stated, "The Referee's orders of this morning are approved and confirmed." [8]

In support of their contention that the district court erred in affirming the referee's orders both refusing to vacate the order of adjudication and confirming the sale to I.F.R.C., the appellants primarily argue that the purpose of Chapter XI is to effect the rehabilitation of corporations experiencing financial difficulties rather than their liquidation. Thus they claim that the referee here abused his discretion in decreeing the death of a fifty-year old corporation employing hundreds of people.

Although we agree that Chapter XI provides a vehicle for rehabilitating financially ill corporations, that enactment by no means guarantees continued existence to every plagued corporation. As the Supreme Court stated in SEC v. American Trailer Rentals Co., 379 U.S. 594, 618, 85 S.Ct. 513, 526, 13 L.Ed.2d 510 (1965), "[I]t must be recognized that Chapters X and XI were not designed to prolong—without good reason and at the expense of the investing public—the corporate life of every debtor suffering from terminal financial ills."

We believe the corporations had ample time to file a plan (their failure to do so being attributable to their own dilatory tactics) and therefore the October 25 order adjudicating them bankrupts was proper. When the order was entered, three and one-half months had elapsed since the filing of the Chapter XI petitions. Despite the fact that these corporations were in all probability acutely aware of their financial difficulties prior to July 6, not until two months later did they file the requisite schedules and statements.[9] In addition, their business had ceased to operate approximately two months prior to July 6 and the receiver was expending in excess of $25,000 monthly to preserve their assets. Faced with these facts and with a firm bid for the purchase of the corporations' assets in hand, the referee followed a prudent course on October 12 when he required the corporations to file a plan by October 25. Like prudence dictated his orders of October 17 setting the date for the sale and appointing appraisers. No plan having been filed by October

reinstate Chapter XI and confirming the sale to I.F.R.C.) is also the subject of two identical appeals.

7. Between the time that the morning hearing before the Referee was completed and the time set for the commencement of the afternoon hearing before the district court, the receiver gave I.F.R.C. a bill of sale for the bankrupts' assets in return for the balance of the purchase price.

8. This order of the district court, affirming the referee's order denying the application to vacate and reconsider the or-

ders of November 7, is the subject of the final two identical appeals.

9. Section 324(1) of the Bankruptcy Act, 11 U.S.C. § 724(1) provides that "the court may, on application by the debtor, grant for cause shown further time, [beyond the filing of the Chapter XI petition] not exceeding ten days for filing * * * the schedules * * *." The referee was extremely patient with the corporations which appeared to be in no particular hurry to effect their own rehabilitation.

25, the referee complied with the literal terms of section 376(2) of the Bankruptcy Act, 11 U.S.C. § 776(2), in adjudicating the corporations bankrupts:

> If * * * an arrangement is not proposed in the manner and within the time fixed by the court, * * * the court shall— * * * (2) where the petition was filed under section 322 of this Act, enter an order, upon hearing after notice to the debtor, the creditors, and such other persons as the court may direct, * * * adjudging the debtor a bankrupt * * *.

◼ Since there was no petition for review of the order of adjudication, that order became final and nonappealable on November 4, ten days after entry, pursuant to section 39(a)(3) of the Bankruptcy Act, 11 U.S.C. § 67(a)(3). In re Acme Furnace Fitting Co., 302 F.2d 318 (7th Cir.), cert. denied, Biggs v. Acme Furnace Fitting Co., 371 U.S. 853, 83 S.Ct. 89, 9 L.Ed.2d 88 (1962). Thereafter any attempt to have this order vacated or set aside was addressed to the sound discretion of the referee. A motion to this effect, coupled with requests to reinstate Chapter XI and to stay the sale, was made by the bankrupts on November 6. Four days previously, a plan of arrangement had been filed. Pursuant to the suggestion of bankrupts' counsel, action on the motion was postponed until after the bidding to enable the creditors to compare the plan and the bid. On the recommendation of the creditors' committee, the referee accepted the bid, confirmed the sale, and denied the bankrupts' motion.

◼ We note at the outset that a confirmed judicial sale, such as the one here, can be set aside on appeal only if the referee was guilty of an abuse of discretion. 4A COLLIER ON BANKRUPTCY ¶

70.98(17) (14th Ed. 1967). The appellants make no claim that the sale was not properly conducted in every respect.[10] In order to support their assertion that the referee abused his discretion, they contend that a sale of all the corporations assets in a Chapter XI proceeding can be sanctioned only in an emergency which they deny existed here. In addition, they contend that of the twenty-four members of the creditors' committee, only twelve were present at the November 6 hearing and that of those twelve, only a bare majority of seven voted to accept the bid rather than the plan.

In re Pure Penn Petroleum Co., Inc., 188 F.2d 851, 24 A.L.R.2d 1206 (2d Cir. 1951), is cited in support of the proposition that an "emergency" is a necessary prerequisite to a sale of all a corporation's assets in Chapter XI. Although the appellants correctly recite the holding of that case, the requirement there set forth is inapplicable to the instant situation in that the corporations here had previously been adjudicated bankrupts. Thus we need not concern ourselves with the problems that the Second Circuit sought to avoid in *Pure Penn*, "that a Chapter XI plan could bring about the same result as ordinary bankruptcy proceedings * * * minus the protective provisions which are part of the latter, especially as to a sale of all the assets." In re Pure Penn Petroleum Co., Inc., supra 188 F.2d at 855. Accord, In re Northern Illinois Development Corp., 324 F.2d 104 (7th Cir. 1963), cert. denied, Sportservice Corp. v. Northern Illinois Development Corp., 376 U.S. 938, 84 S. Ct. 792, 11 L.Ed.2d 658 (1964).

There is likewise no merit to the appellants' other contention that the order confirming the sale was somehow vitiated by the referee's "reliance" on the recommendation of the creditors.[11] Although

---

10. See General Order 48(2).

11. The record indicates that counsel for the bankrupts and the proponent of the plan appeared before the creditors' committee on November 6, and therefore, we

assume that they were aware of the committee's composition. However, they made no mention of this point to the referee when the hearing reconvened after the recess.

acceptance by a majority of the creditors is required prior to confirmation of an arrangement, there is no provision in the Bankruptcy Act dealing with ordinary bankruptcy liquidation which requires that a referee solicit, entertain, or follow creditors' recommendations or preferences. Since the price paid for the bankrupts' assets far exceeded their appraised value, we cannot substitute our judgment for that of the referee who, intimately familiar with the bankrupts' predicament, confirmed the sale.[12] Cf. In re Marathon Foundry and Machine Co., 228 F.2d 594, 598 (7th Cir. 1955), cert. denied, Marathon Foundry & Machine Co. v. Schwartz, 350 U.S. 1014, 76 S.Ct. 659, 100 L.Ed. 874 (1956). If the referee had confirmed the sale without affording the proponents of the plan an opportunity to talk to the committee, we could not say that such action would have constituted an abuse of discretion. That the referee allowed such overtures and then purported to "follow" the committee's recommendation did not constitute an abuse of discretion either, but rather reflected a commendable effort on his part to afford the fullest opportunity to the competing interests to be heard.[13]

■■ If parties are to be encouraged to bid at judicial sales, there must be stability in such sales and a time must come when a fair bid is accepted and the proceedings are ended. From a reading of the record, we are convinced that the proponents of the plan were, in effect, "competing bidders," both at the time of the sale and thereafter. Once the sale of the

assets to I.F.R.C. was confirmed, the existence of fraud, mistake, or a like infirmity would be necessary to set that confirmed sale aside. No allegations of such vitiating circumstances were made here. The bankrupts' amended plan filed on November 21 was merely a higher "bid," consideration of which was properly rejected by the referee. See 4A COLLIER ON BANKRUPTCY ¶ 70.98(17), at 1183–1193 (14th Ed. 1967). Smith v. Juhan, 311 F.2d 670 (10th Cir. 1962); In re Marathon Foundry and Machine Co., 239 F.2d 122 (7th Cir. 1956), cert. denied, Dyner v. Schwartz, 353 U.S. 912, 77 S.Ct. 669, 1 L.Ed.2d 665 (1967).

After considering the appellants' other contentions, we conclude that they are without substance. The referee acted well within his discretion in denying the application for reconsideration. Nor did the district court err on November 20 and 21 in approving the actions of the referee.

Our decision in this case on the merits necessarily reflects a denial of I.F.R.C.'s motion to dismiss these appeals. In re Central Metallic Casket Co., Inc., 273 F.2d 506 (7th Cir. 1960); In re Tyne, 261 F.2d 249 (7th Cir.), cert. denied, 359 U.S. 974, 79 S.Ct. 892, 3 L.Ed.2d 841 (1959). Cf. In re Drive-In Development Corp., 371 F.2d 215 (7th Cir. 1966), cert. denied, creditors' Committee of Drive-In Development Corp. v. National Boulevard Bank of Chicago, 387 U.S. 909, 87 S.Ct. 1691, 18 L.Ed.2d 626 (1967).

The orders appealed from are affirmed.

12. We have yet to discover a convincing demonstration that the plan would have yielded substantially more for the creditors than the sale.

13. At the hearing on November 21, the referee stated:
I had a right to depend upon and rely upon the representations made to me by counsel for the creditors' committee.

This was not the sole determining factor in the acceptance or approval of this bid. If I had felt at the time that the bid was inadequate, the decision of the creditors' committee certainly would not be the final one. I extended to them on the same theory that the law functions an opportunity to express their views, to express their desire, and they did so.