In the Matter of AIR AND SPACE MAN-
UFACTURING, INC., Debtor.

Kenneth K. IRVING and Ralph D.
Irving, Appellants,

v.

Homer E. CAPEHART, Trustee in
Reorganization, Appellee.

No. 16709.

United States Court of Appeals
Seventh Circuit.

April 29, 1968.

Frank E. Gilkison, Jr., Muncie, Ind., John R. Carr, Jr., Donald A. Schabel, Indianapolis, Ind., for appellants, White, Haymond, Pierce, Beasley & Gilkison, Muncie, Ind., Buschmann, Carr & Schabel, Indianapolis, Ind., of counsel.

Alan I. Klineman, Indianapolis, Ind., for debtor.

Homer Earl Capehart, Jr., Klineman, Rose & Wolf, Krieg, DeVault, Alexander & Capehart, Indianapolis, Ind., for appellee.

Before DUFFY, Senior Circuit Judge, and SCHNACKENBERG and FAIRCHILD, Circuit Judges.

DUFFY, Senior Circuit Judge.

A motion by the trustee to dismiss the appeal was taken with the case. We deny the motion to dismiss and proceed to consider the case on the merits.

On March 21, 1967, a petition for a reorganization of Air and Space Manufacturing, Inc. under Chapter X of the Bankruptcy Act, was filed in the District Court by three of its creditors. On April 7, 1967, the petition was approved by the Court as properly filed, and Homer E. Capehart, Esq., was appointed trustee. An order confirming him as trustee was entered on July 5, 1967.

On July 10, the trustee petitioned for an extension of time to file a plan of reorganization. On August 8, 1967, the trustee petitioned for a further extension to file such a plan, and the Court extended the time to September 1, 1967. No plan was filed and no further extensions were sought or granted.

In his petition filed October 5, 1967, the trustee reported that he had investigated the feasibility of reorganizing the debtor as a going business, but had concluded that it would be in the best interests of all persons to liquidate the real and personal property of the debtor.

The Court entered an order on October 5, 1967, directing the trustee to offer the personal and real property of debtor for sale at public auction on November 14, 1967. The order also directed certain persons including the Irvings, claiming liens on debtor's property, to show cause on October 19, 1967, why the property of debtor should not be sold

free and clear of the claimed security interests or liens, with said security liens, if valid, to attach to the proceeds of the sale.

The Irvings and the trustee filed a stipulation at the hearing on October 19, 1967, wherein it was recited that the trustee agreed that the real estate of the debtor upon which the Irvings claimed a first mortgage lien, should not be sold for less than $235,000 without the consent of the Irvings. Further, that the Irvings enter no objection to the sale of the real estate free and clear of their lien, and that the lien, to the extent valid, attach to the proceeds from the sale.[1]

On October 26, 1967, the trustee reported to the Court the terms of an offer from Ben Selig to purchase all of the assets of the estate. The creditors and stockholders were notified that the proposed auction sale had been postponed and that debtor's property had been appraised at $355,723.75.

On November 20, 1967, appellant Kenneth K. Irving tendered an offer to purchase all of the assets. The Selig offer and the Irving offer were considered at a hearing before the Court on November 20, 1967. The Court took both offers under advisement until December 1, 1967.

Kenneth K. Irving tendered an amended offer on November 24, 1967 wherein he increased the cash portion of his previous offer by $18,000.

At the hearing on December 1, 1967, two cash offers were made, the higher of the two being from the Toledo Industrial Machine Corporation, in the total amount of $333,000. These offers were considered by the Court along with the Selig and Irving offers. The Court announced its intention to approve the Toledo offer but granted the parties concerned time to file objections to such offer.[2]

Objections were filed. Thereafter, the trustee filed his response to the objections. The Court approved the sale of debtor's assets to Toledo. This appeal followed.

We consider first the claim of appellants that the District Court lacked jurisdiction to authorize a liquidation of the debtor's assets in a Chapter X proceeding. Appellants urge that as no plan of reorganization had been filed, the provisions of Section 236(2) of the Bankruptcy Act[3] became applicable.

Section 236(2) provides that if no plan of reorganization is proposed within the time fixed or extended by the judge, the judge shall, after a hearing on notice, enter an order either adjudging the debtor a bankrupt and directing that bankruptcy be proceeded with, or dismissing the proceedings under Chapter X "as in the opinion of the judge may be in the interests of the creditors and stockholders."

Appellants argue that in view of the wording of the statute, the Court had no jurisdiction or power to entertain the trustee's petition to sell the debtor's property free and clear of liens, and that all of the proceedings had on such petition are null and void.

This case poses the unique problem of reconciling, if possible, 11 U.S.C. § 516 (3) with 11 U.S.C. § 636(2). A number of cases, including several from this Circuit, have upheld the power of a district judge in a Chapter X proceeding, to order the sale of assets under 11 U.S.C. § 516(3).

In Re Lorraine Castle Apts. Bldg. Corp., Inc., 149 F.2d 55 (7 Cir., 1945); In Re Marathon Foundry & Machine Co., 228 F.2d 594 (7 Cir., 1955); Frank v. Drinc-O-Matic, Inc., 136 F.2d

---

1. The Irvings claim the amount due on the debt secured by their first mortgage was $306,945 as of June 30, 1967.

2. The Irvings contend that their bid was at least $32,000 greater than the Toledo bid. Irvings' bid was not a complete cash offer. The offer contemplated the satisfaction of a first mortgage which the Irvings held on the real estate of the debtor.

3. 11 U.S.C. § 636(2).

906 (2 Cir., 1943); In Re V. Loewer's Gambrinus Brewery Co., Inc., 141 F. 2d 747 (2 Cir., 1944); In Re Solar Mfg. Corp., 176 F.2d 493 (3 Cir., 1949); In Re The Sire Plan, Inc., 332 F.2d 497 (2 Cir., 1964).

With reference to 11 U.S.C. § 636(2), Remington [4] states that in such a case, 11 U.S.C. § 636(2) states the judge shall dismiss the proceeding or adjudge the debtor bankrupt and proceed with the bankruptcy. Remington also states that the Court " * * * cannot order liquidation of the estate. Chapter X contemplates either a dismissal or liquidation in ordinary bankruptcy. It does not contemplate a liquidation in a Chapter X proceeding."

The foregoing view may be contrasted with another Remington view in discussing 11 U.S.C. § 516(3), power of sale.[5] "That a sale may force liquidation is not a controlling consideration, although authority to sell may be refused where the result would be enforced liquidation, or would make reorganization impossible."

█ It should be noted that 11 U.S.C. § 516(3) states "Upon the approval of a petition, the judge may, *in addition to the jurisdiction, powers, and duties in this chapter * * *"* (Emphasis supplied). In our view, this language can only mean that under appropriate circumstances, the court has the power to order a sale in spite of the language used in 11 U.S.C. § 636(2).

Had the assets of the debtor been perishable, it is clear the court would have the power to authorize a sale thereof. Here, much of the machinery was precision equipment stored and unused in an unheated building. Such storage involved considerable expense to the estate. The Court found it would be in the best interests of the creditors and the estate that such machinery and equipment be sold promptly to avoid further deterioration.

In Re The Sire Plan, Inc., 332 F.2d 497 (2 Cir., 1964) the Court upheld the District Court's decision to sell an uncompleted hotel before a reorganization plan was submitted by the trustee. The Court, at page 499, said " * * * the partially constructed building is a 'wasting asset' and can only deteriorate in value the longer it remains uncompleted."

█ The general rule dispositive of this issue was stated in In the Matter of Northern Ill. Development Corp., 324 F.2d 104, 108 (7 Cir., 1963)—"It has been recognized that where a sale of all the assets of a debtor in a proceeding designed for the purpose of effecting reorganization rather than liquidation is justified because of the existence of an emergency warranting such sale the fact that the sale is not in aid of a reorganization plan and will in effect result in a liquidation does not require that the sale await a liquidation in a straight bankruptcy proceeding." We find no error in the District Court's determination.

The stipulation between the trustee and the Irvings dated October 19, 1967, is of controlling importance. It was signed by the two attorneys for the trustee and by an attorney for the Irvings, and was approved by the District Judge. There is no claim here that the signing of the stipulation by Irvings' attorney was obtained by fraud or that such signature was not authorized by the Irvings.

True it is the attorney for the Irvings now says that the stipulation was signed under the belief that the property of the debtor was to be sold at an auction sale November 14, 1967 theretofore authorized by the Court, and that the provision therein for sale "at public or private sale" had been overlooked. The stipulation is not so restrictive as to limit the auction sale to November 14, 1967.

█ We hold the Irvings are bound by the stipulation. We hold specifically that the Irvings are bound by the provi-

---

4. 11 Remington on Bankruptcy, Sec. 4667 at 508 and 509 (Rev.Ed.1961).

5. 11 Remington on Bankruptcy, Sec. 4400 at 93 (Revised Ed., 1961).

sion of the stipulation—"The Irvings enter no objection to the sale of the real estate free and clear of their alleged lien, with their lien, to the extent valid, to attach to the proceeds from the sale."

A further provision of the stipulation provides that " * * * if the property of the Debtor is sold in bulk, including both real and personal property, the Trustee shall have the sole right to apportion the proceeds from said sale as between the real and personal property, so long as the Trustee apportions at least two hundred thirty-five thousand ($235,-000) Dollars to the real estate. * * * "

The Irvings strongly urge that the $235,000 upset price mentioned in the stipulation was a minimum limit, but claim that the trustee is now seeking to have it also regarded as the maximum limit. The provision in paragraph 3 of the stipulation is that "If the property of Debtor is sold in bulk, including both real and personal property, the Trustee shall have the sole right to apportion the proceeds from said sale as between real and personal property, so long as the Trustee apportions at least $235,000 to the real estate. * * * "

█ This provision of the stipulation does not give the trustee unlimited arbitrary authority in apportioning the proceeds of the sale between real and personal property. The District Court should pass judgment on the reasonableness of any such apportionment that may be made by the trustee.

Appellants contend that the District Court committed error when it did not accept their bid for the real and personal property since they allege it was the highest bid. The District Court held that "The validity of the alleged liens of the Objectors having been challenged by the Trustee, the Court has the discretionary power to order said property sold free and clear of such liens, in order to preserve the value of the *res*, pending the ultimate determination as to which party is entitled to the proceeds (Citations omitted)." We agree with the Court on this holding.

A sharp difference of opinion has been presented as to whether the Irvings' proof on file herein is *prima facie* evidence of its validity and amount. The trustee argues that such a claim in a Chapter X proceeding is not *prima facie* evidence of either its validity or amount, citing In Re Annin & Co., 95 F.2d 381 (2 Cir., 1938), a case which arose under 77B of the Bankruptcy Act. However, Remington expresses a contrary view.[6] He relies on Whitney v. Dresser, 200 U.S. 532, 26 S.Ct. 316, 50 L.Ed. 584 (1906) which interpreted section 57(f) of the Bankruptcy Act. Since section 57(f) is very similar to section 196 of the Chandler Act, 11 U.S.C. § 596, Remington reasons that the *Whitney* doctrine is applicable to Chapter X reorganizations.

█ We agree that such a rule may be valid as a general proposition but it is not controlling here. The validity of the lien has been challenged. The Court should pass on the question of validity of the lien without being bound by such a rule. We hold that in evaluating a lien claimant's bid, it need not be assumed that the lien is valid. The amount of the lien should be determined after both sides have had the opportunity of submitting proof.

The order of the District Court dated December 31, 1967, approving a sale of debtor's property and overruling appellants' objections to the sale, is affirmed.

The case is remanded to the District Court for further appropriate proceedings not inconsistent with this opinion.

Affirmed.

6. 11 Remington on Bankruptcy, Sec. 4524, at pp. 244, 245 (Rev.Ed., 1961).