**Michael T. NIGRO, Appellant,**

v.

**ESTATE OF CHUNG KING, INC., Raymond Costello, Trustee, St. Charles Savings & Loan Association, et al., Appellees.**

**No. 83 C 5322.**

United States District Court,
N.D. Illinois, E.D.

Dec. 16, 1983.

Michael T. Nigro, Glendale Heights, Ill., pro se.

Raymond Costello, Carpentersville, Ill., C. John Ruddy, Aurora, Ill., for appellees.

## MEMORANDUM AND ORDER

BUA, District Judge.

Michael Nigro appeals from an order entered by Bankruptcy Judge Robert Eisen in No. 83 A 832 (82 B 2482) (Bankr.N.D.Ill. June 9, 1983).[1] The issue presented on appeal is whether the bankruptcy court abused its discretion by vacating its previous order approving the sale of the debtor's property to appellant Michael Nigro. For the reasons stated herein, the Court concludes that the bankruptcy court did not abuse its discretion and the June 9, 1983 order is therefore affirmed.

### I. Facts

Appellant Michael T. Nigro is an attorney and represented a principal of the debtor in the bankruptcy proceedings below. On March 17, 1983, the trustee filed a complaint seeking court permission to sell real estate owned by the bankruptcy estate to the Unity Masonic Lodge for $116,300. In that complaint, the trustee estimated that the sale would net approximately $4,000 to the bankruptcy estate.

On March 31, 1983, a hearing was held before Judge Eisen. At that hearing, Nigro, acting on his own behalf, presented an offer of $120,000 to purchase the property. The trustee, having previously agreed to split the net proceeds of the sale with a creditor, recommended that the bankruptcy court approve the proposed sale to Nigro. The court approved the sale of the property to Nigro for $120,000 at the March 31 hearing. At that time, the bankruptcy court and the parties believed that the proposed sale to Nigro would result in net proceeds of approximately $2500.00 to the estate.

After the court approved the sale, however, Nigro performed a title search and discovered that $4,526.30 in back taxes assessed against the property were unpaid. Nigro then prepared a new closing statement which showed a net loss to the estate of $2,238.78.

Upon learning that the bankruptcy estate would not receive any proceeds if the property were sold to Nigro for $120,000, Win Liu, a creditor, filed a motion requesting that the bankruptcy court vacate its March 31 order approving the sale to Nigro. At a hearing on Liu's motion on May 10, 1983, several arguments were presented in support of the motion to vacate the sale to Nigro. The court offered to vacate the sale only if a new offer was produced that was sufficiently higher than the $120,000 sale price to justify setting aside the original sale to Nigro. The court continued the hearing until June 8, 1983, at which time new offers would be considered.

At the June 8, 1983 hearing, the Unity Masonic Lodge presented a bid of $135,000 for the property. Upon receiving the bid, the bankruptcy court ruled that the $135,000 bid was sufficiently higher than the original sale price to justify reopening the bidding. The court set June 9, 1983, at 9:30 a.m., as the deadline for any additional bids. On June 9, 1983, the bankruptcy court approved the sale of the property to Nigro for $142,000.

In this appeal, Nigro argues that the bankruptcy court abused its discretion because no grounds (e.g. fraud, mistake or improper notice) existed to justify setting aside the original sale and that the June 8 bid of $135,000 was not sufficiently greater than Nigro's original $120,000 bid to justify vacating the original sale. Appellees assert three grounds in support of the bankruptcy court's decision to vacate the March 31 sale. First, that the March 31 order was based on the mistaken belief that the sale to Nigro would result in net gain to the creditors when in fact the sale would have produced a $2,238.78 net loss. Second, that the March 31 sale should be vacated because an interested bidder, the Unity Masonic Lodge, failed to receive notice of Nigro's $120,000 bid. Third, that the sale should be vacated because Nigro obtained the bankruptcy court's approval due to his "preferred posi-

---

1. The June 9, 1983 order was not entered on the bankruptcy court's docket until June 16, 1983. Nigro's Notice of Appeal, filed on June 23, 1983, was therefore timely filed under Bankruptcy Rule 802(a).

tion" as an attorney involved in the prior bankruptcy proceedings. Finally, although not argued by appellees, the bankruptcy court's decision to vacate the March 31 sale was proper if the offer received on June 8, 1983 ($135,000) was sufficiently higher than the original $120,000 offer to justify reopening the bidding.

## II. *Discussion*

■ In reviewing a decision of the bankruptcy court, the district court must accept the bankruptcy court's findings of fact, unless those findings are clearly erroneous. *In re Prudential Insurance Co. of America*, 29 B.R. 432, 433 (W.D.Pa.1983). Although legal determinations by the bankruptcy court generally may be reversed if they are "contrary to law," certain determinations are left to the discretion of the bankruptcy judge. One such decision that is left to the sound discretion of the bankruptcy judge is whether an order confirming a sale of the debtor's property may be vacated due to compelling equities. *In re Cada Investments, Inc.*, 664 F.2d 1158, 1162 (9th Cir.1982); *In re Webcor, Inc.*, 392 F.2d 893, 898 (7th Cir.1968). Accordingly, this Court may reverse the bankruptcy court's decision to set aside the March 31 sale only if an abuse of discretion is shown.

■ Although the bankruptcy court's power to set aside its orders is broad, that power is not unlimited. *In re Cada Investments, Inc.*, 664 F.2d 1158, 1161 (9th Cir. 1981). Generally, a confirmed sale may be set aside if the sale was " 'tinged with fraud, error or similar defects which would in equity affect the validity of any private transaction.' " *In re General Insecticide Co.*, 403 F.2d 629, 631 (2d Cir.1968) (*quoting* 4A Collier, Bankruptcy, ¶ 70.98[16], 1183, 1184–94 (14th ed. 1967)). *See also In re Webcor, Inc.*, 392 F.2d 893, 899 (7th Cir. 1968).

**2.** Regarding the hearing scheduled for June 8, 1983, the bankruptcy judge stated:

I would want new notice to go out, perhaps new advertising or whatever was necessary; that is how it would have to be done.

\* \* \* \* \* \*

*Improper Notice As A Ground For Setting Aside The March 31 Sale*

■ Failing to notify interested buyers of a proposed sale in bankruptcy may, in the discretion of the bankruptcy court, provide grounds for setting aside a confirmed sale. *In re Time Sales Finance Corp.*, 445 F.2d 385, 387 (3d Cir.1971). In this case, an attorney for the Unity Masonic Lodge argued at the May 10, 1983 hearing that the sale to Nigro should be vacated because the Unity Masonic Lodge failed to receive proper notice of Nigro's March 31 bid. Although at that hearing Judge Eisen expressed reservations regarding the adequacy of the notice to the Unity Masonic Lodge,[2] on June 8, 1983, Judge Eisen expressly found that notice was adequate (R. 13–7–8).

After a careful review of the record below, this Court finds that the bankruptcy court's finding of adequate notice was not "clearly erroneous" and therefore inadequate notice cannot be a basis for upholding the bankruptcy court's decision to set aside the March 31 sale.

*Nigro's "Preferred Position" As A Basis For Setting Aside The March 31 Sale*

■ Under certain circumstances an order approving a sale may be vacated if the bankruptcy court finds that the dangers of interested dealing outweigh the policy favoring the finality of judicial sales. *Wolverton v. Shell Oil Co.*, 442 F.2d 666, 670 (9th Cir.1971). In *Wolverton*, the court upheld the bankruptcy court's decision to vacate a sale of estate assets to the bankrupt corporation.

In this case, Nigro represented a principal of the debtor corporation in the bankruptcy proceedings. Nigro's offer on March 31, however, was made on his own behalf and not as a representative for his client. The issue of Nigro's "preferred position" was

I think that is the way to do it. I don't know how much, what the original notice, how much notariety was given to the [March 31, 1983] sale but this would also take care of that problem if there also was an infirmity in that regard.

R. 12–14.

only briefly discussed at the May 10 hearing and Nigro's "preferred position" was not relied upon by the bankruptcy court as a ground for vacating the March 31 order. Moreover, the record below does not support such a contention. Since appellees' argument that Nigro's "preferred position" provides authority for this Court to reverse the bankruptcy court is not supported by the record, it is therefore without merit.

*Mistake As A Basis For Setting Aside The March 31 Sale*

In *In re Webcor,* 392 F.2d 893 (7th Cir. 1968), the Seventh Circuit stated that "[o]nce the sale of the assets ... was confirmed, the existence of fraud, mistake, or a like infirmity would be necessary to set that confirmed sale aside." *Id.* at 899. Appellees argue that the bankruptcy court acted properly to vacate the original sale to Nigro when the court learned that the March 31 sale would not result in a net gain to the estate.

When the bankruptcy court approved the sale to Nigro for $120,000 on March 31, the court and the parties believed that such a price would result in net proceeds for the bankruptcy estate of approximately $2,500. At the May 10 hearing, the bankruptcy court first learned that back taxes were owed on the property and the March 31 sale to Nigro would result in a net loss to the estate. Although the policy behind the finality of judicial sales is an important one, it is of overwhelming importance that the creditors in bankruptcy be protected. *See Proctor & Gamble Manufacturing Co. v. Metcalf,* 173 F.2d 207 (9th Cir.1949). This Court finds that upon learning that its March 31 order would produce a net loss to the estate, the bankruptcy court properly exercised its discretion by inviting new bids on the property.

*Grossly Inadequate Sales Price As A Basis For Setting Aside the March 31 Sale*

In *In re Muscongus Bay Co.,* 597 F.2d 11 (1st Cir.1979), the bankruptcy court refused to confirm a bid of. $23,333 which was received as the only bid at a public auction. Instead, the court decided to extend the bidding once it learned that a higher bid of $26,200 was later received. The person who submitted the original bid appealed the bankruptcy court's decision to accept the higher bid. The district court and the Court of Appeals for the First Circuit, however, held that upon receiving the $26,200 bid (which was 12.3% higher than the original bid), the bankruptcy court was justified in reopening the bidding. *Id.* at 12. The court further noted that the bankruptcy court's decision to reopen the bidding resulted in the bankruptcy estate receiving a price 21.5% higher than the original offer. *Id.* at 13.

In this case, the $135,000 offer presented at the June 8 hearing was 12.5% higher than the $120,000 sale price to Nigro. Presented with this offer, the bankruptcy court was justified in reopening the bidding.[3] The new offer was sufficiently higher than the original sale price to render the original price "grossly inadequate" under the reasoning of *Muscongus Bay.* Also, it is relevant to note that the bankruptcy court's decision to reopen the bidding ultimately produced an offer which was $22,000 higher than the original offer submitted by Nigro. *Cf. Muscongus Bay,* 597 F.2d at 13. Upon learning of the higher bid, the bankruptcy court properly exercised its discretion to reopen the bidding and thereby protect the best interests of all creditors.

*Conclusion*

The bankruptcy court did not abuse its discretion when it vacated its March 31, 1983 order approving the sale of property to Nigro for $120,000. When the court

---

**3.** Sometime after learning of the tax debt, Nigro apparently agreed to increase his offer "so there would be no loss to the estate." (R. 13–3). Assuming therefore that the original $120,000 offer had been increased to $124,-275.29, the $135,000 offer then represented a 8.6% increase over Nigro's "amended" bid. The Court finds that, under *Muscongus Bay,* a 8.6% increase was . sufficient to justify the bankruptcy court's decision to reopen the bidding.

learned that the $120,000 sale price was approved based on the mistaken belief that the bankruptcy estate would receive a net gain from the sale, the court properly exercised its discretion to reopen the bidding. Furthermore, upon receiving a bid 12.5% higher than the original sale price to Nigro, the bankruptcy court properly exercised its discretion to set aside the $120,000 sale because it was "grossly inadequate." Therefore, for the reasons stated herein, the order of the bankruptcy court is affirmed.

IT IS SO ORDERED.