In re HOMESTEAD INDUSTRIES, INC., Debtor.

Dean MUSI, Movant,

Homestead Industries, Inc., Movant,

v.

Joseph P. NIGRO, Esquire, Trustee, Respondent,

Ace Tire and Parts, Co., Inc., Respondent.

Bankruptcy No. 90–3721–BM.
Motion No. 92–0479M.

United States Bankruptcy Court, W.D. Pennsylvania.

April 9, 1992.

David A. Scott, Thorp Reed and Armstrong, Pittsburgh, Pa., for movant, debtor.

Michael G. McCabe, Goehring, Rutter & Boehm, Pittsburgh, Pa., for movant Dean Musi.

Thomas J. Schuchert, Schuchert Horne, P.C., Pittsburgh, Pa., for respondent Ace Tire & Parts, Inc.

James M. Malley, Nigro & Malley, Pittsburgh, Pa., for respondent, trustee.

Mark L. Glosser, Stone, Glosser & Stone, Pittsburgh, Pa., for Committee of Unsecured Creditors.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is a motion by debtor and Dean Musi (hereinafter "movants") for reconsideration of an order issued on February 18, 1992, approving the sale of debtor's realty to Ace Tire and Parts Co., Inc. (hereinafter "Ace"), for $402,000. Movants ask that the order be vacated and that bidding on said property be reopened. They contend that Musi did not clearly hear or understand the court's instructions at the sale and that as a consequence he mistakenly bid on debtor's personalty when he intended to bid on the realty. Movants claim that Musi is willing and able to bid approximately $100,000 more than the highest bid by Ace at the sale. The Official Committee of Unsecured Creditors (hereinafter "Committee") offers no legal or factual basis for its position but urges the court to reconsider.

Ace, for obvious reasons, opposes the motion and denies that Musi was mistaken or erred. To the contrary, the successful bidder infers Musi was merely feeling remorse.

Although this court would also desire additional funds with which to pay creditors who clearly will not be paid in full, for the reasons hereinafter set forth this motion must be denied.

–I–

FACTS

Debtor filed a voluntary chapter 11 petition on November 26, 1990. A trustee was appointed shortly after the case was converted to a chapter 7 proceeding on November 7, 1991.

On January 21, 1992, the trustee brought a motion to sell debtor's personalty and real property free and clear of all liens and encumbrances.

A hearing was held on the motion on February 18, 1992. Debtor's personalty was sold first and was followed by a sale of debtor's realty. Musi was present in the courtroom throughout both sales.

The trustee addressed the court prior to the sale of the personalty and stated unequivocally and with clarity that he had received an offer of $600,000 for debtor's personalty. The trustee enumerated in great detail what items were and what items were not being sold at that time. He explicitly stated that the sale included debtor's equipment, inventory, blueprints, trademarks, and customer list but did not include debtor's accounts receivable, certain metal drums containing unidentified liquids, and certain product liability claims.

Counsel to the first bidder then came forward and stated that his client was interested in purchasing only debtor's personalty. He then repeated the items of personalty which were to be included in the proposed sale and made clear that debtor's realty was to be sold separately and that his client was not bidding on the latter.

The court, out of an abundance of caution, then repeated still another time that the items to be sold first included only debtor's equipment, inventory, blueprints, trademarks, and customer lists. After doing so, the court then inquired whether anyone in the courtroom wished to make a higher or better offer than $600,000.

Musi, who had been present in the courtroom throughout the proceeding, came forward at that point and stated that he wished to make a higher bid.

The court, in order to avoid confusion or misunderstanding, then inquired of Musi whether he understood what it was he was offering to purchase. Musi responded without equivocation that he did.

Before making his bid, Musi asked for two points of clarification. One of his questions concerned the "penalty" if the "soil" was contaminated. The court then asked the trustee whether any "soil" was included in the sale, whereupon the trustee responded soil was not included among the personalty to be sold.

Musi, upon hearing the response of the trustee, then bid $601,000—one thousand dollars ($1,000) more than the initial bid. When the court refused to permit bids in increments of a thousand dollars and required that all bids be in increments of ten thousand dollars, Musi bid $610,000. The

court then reconsidered its ruling *sua sponte* and permitted bids in increments of five thousand dollars.

Musi, when asked whether he wished to bid $605,000 instead of $610,000, responded that he wished to bid only $601,000 and withdrew his bid altogether and returned to his seat in the courtroom. After inquiring whether there were any higher or better offers, and after determining that no further bidding would occur, the sale of debtor's personalty for $600,000 was approved.

Sale of debtor's realty was conducted immediately after sale of the personalty. As had been the case with the sale of debtor's personalty, the trustee stated with clarity what was included in this sale. He indicated clearly that this sale included the building in which debtor had conducted its business.

Ace made an initial offer of $402,000. When no other bidder came forward, sale of the realty to Ace for $402,000 was approved by the court. Musi, who also was present during this sale, did not participate.

No party in interest objected to either sale or raised a question of adequacy of offer prior to the entry of the Order confirming the sales. No one appeared disoriented or indicated that a mistake had occurred.

A hearing was held on the motion before the court at this time on April 2, 1992. Musi did not appear at the hearing but was represented by counsel, who advised that Musi was now willing to offer $501,000 for debtor's realty. When the court asked counsel whether he personally knew that Musi had funds sufficient to close the deal, counsel advised that he was acting upon his client's word. When the court inquired as to the reason Musi was now offering $501,000 rather than his original $601,000, counsel assumed this was merely an opening bid.

–II–
ANALYSIS

■ Bankruptcy courts are loath to tamper with a confirmed sale of estate property. Judicial sales are to be accorded a substantial measure of finality in order to protect and encourage the process of selling estate assets.

> If parties are to be encouraged to bid at judicial sales there must be stability in such sales and a time must come when a fair bid is accepted and the proceedings are ended.

*In re Webcor,* 392 F.2d 893, 898 (7th Cir. 1968).

■ In order for a confirmed sale to be set aside, there must be a "fundamental defect" which is sufficiently egregious to overcome the policy of favoring finality. *In re Time Sales Finance,* 445 F.2d 385, 386–87 (3d Cir.1971). The defect must be so egregious as to "shock the conscience of the chancellor". *In re Lamont,* 453 F.Supp. 608, 609–10 (N.D.N.Y.1978), *aff'd,* 603 F.2d 213 (2d Cir.1979).

Authority to set aside a confirmed sale is derived from Fed.R.Civ.P. 60(b), which is made applicable to bankruptcy proceedings by Bankruptcy Rule 9024. *In re Marcus Hook Development Park, Inc.,* 943 F.2d 261, 265 (3d Cir.1991) (*citing Matter of Met–L–Wood,* 861 F.2d 1012, 1018 (7th Cir. 1988), *cert. denied,* 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989)). Rule 60(b)(1) permits an order to be set aside because of mistake, inadvertence, surprise, or excusable neglect.

■ Movants maintain that the order confirming the sale of debtor's realty should be set aside because of a mistake on the part of Musi. They aver that Musi did not clearly hear or completely understand the instructions concerning the sale and that, as a consequence, Musi mistakenly believed that he was bidding on debtor's realty when he offered $601,000. In short, movants contend that Musi mistakenly believed that he was bidding on debtor's realty when he bid at the sale of debtor's personalty.

The court has carefully reviewed the record of the proceedings of February 18, 1992, and finds that Musi's conduct at the sale was *not* based on any mistake on his part.

Movants' contention that Musi did not clearly hear the instructions concerning the sale is wildly implausible. The courtroom in which the sale was conducted is quiet and orderly. The court does not permit persons in the courtroom to carry on conversations among themselves so that others in the courtroom may hear the proceedings. Also, the courtroom is not very large. Mr. Musi was at all times no more than twenty feet from the discussion. Unless Musi is hard of hearing, which movants do not allege, he had no problem hearing everything that was said. Moreover, Musi appeared to experience no difficulty in hearing what was being said when he took part in the colloquy with the court.

The contention that Musi mistakenly believed that he was bidding on debtor's realty when he offered $601,000 is belied by the events that transpired at the hearing. As has been noted, the trustee, counsel for the eventual purchaser of debtor's personalty, and the court stated clearly and unequivocally just prior to the bidding on debtor's personalty that *only* personalty was being sold at that time. The trustee and then the court enumerated which items were being sold at that time and which were not. Counsel to the eventual purchaser of the personalty stated unequivocally that the realty was to be sold separately and that his client was not bidding on the realty. Also, when Musi asked about contaminated soil he was informed by the trustee that soil was not part of the personalty being sold at the time. When he was asked by the court whether he understood what he was bidding on, Musi replied in the affirmative.

Finally, the court conducted a sale of debtor's realty immediately after the personalty had been sold. As had been done when the personalty was to be sold, the trustee specifically stated on the record what was to be included in the second sale. He clearly indicated that the latter sale pertained to the building in which debtor had operated its business. Musi, who had returned to his seat in the courtroom after withdrawing his previous bid, was present during the sale of the realty and did not participate by making a bid.

The court had the opportunity to observe Musi's demeanor. He did not appear to be confused or disoriented and answered inquiries by the court clearly and coherently. It strains at credulity to maintain that Musi mistakenly believed that he was bidding on debtor's realty when he bid on debtor's personalty.

Much was made by movants of an appraisal which purportedly shows that debtor's realty is worth much more than Ace bid for it. No weight can be given to this allegation, as the facts surrounding said document are in conflict and as no proof of its reliability was offered.

Finally, even if the court were inclined to vacate its order confirming the sale to Ace, to do so would be fraught with peril and might not be in the best interest of the estate and creditors. Although Musi's counsel represented to the court that Musi presently has $501,000, counsel conceded that he has no personal knowledge of the existence of said funds. Musi, who at that time desired to secure financing of the sale, was evasive on February 18, 1992 as to whether he had the ability to close on any purchase. For reasons unknown to the court, he refused to identify the source of his financing. The court is concerned that if it voids the sale to Ace for $402,000, there would be no funds with which Musi would be able to close. Were that to happen, there would be less money, not more, with which to pay creditors.

The above considerations overwhelmingly point in favor of maintaining the *status quo* and allowing the order of February 18, 1992 to stand. There are no "fundamental defects" in the prior sale which are so egregious as to "shock the conscience" of this court.

An appropriate Order shall be issued.

### ORDER OF COURT

AND NOW at Pittsburgh this 9th day of April, 1992, in accordance with the foregoing Memorandum Opinion, it is ORDERED, ADJUDGED and DECREED that the Motion For Reconsideration Of Order Approving The Sale Of Debtor's Realty, To

Vacate The Order And To Reopen Bidding On Debtor's Realty filed by debtor and Dean Musi, be and is hereby DENIED.