**In re REPUBLIC FABRICATORS, INC., Debtor.**

**Bankruptcy No. 82–61760.**

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division.

July 20, 1989.

R. Golding, Lord, Bissell & Brook, Chicago, Ill., for Lord, Bissell & Brook (LB & B).

R. Stochel, John M. O'Drobinak, P.C., Crown Point, Ind., for First Bank of Whiting (Bank).

## MEMORANDUM OF DECISION[1] ON RECONSIDERATION OF DENIAL OF ATTORNEY COMPENSATION

FRANCIS G. CONRAD, Bankruptcy Judge, sitting by special designation.

After time for an appeal had lapsed from a bench Order where we denied LB & B's application for compensation as co-counsel for Republic Fabricators, Inc. (Debtor) to recover under 11 U.S.C. § 506(c),[2] for lack of an expressed contract between LB & B and a Senior Vice–President, a unauthorized agent, of the Bank, LB & B requested we revisit the facts under theories of unjust enrichment, quantum meruit and/or quasi contract. The Bank moved to dismiss LB & B's motion on grounds of res judicata, and, upon dismissal, requested its own attorney's fees and sanctions for LB & B's untimely efforts.

We do not reconsider our bench Order because LB & B failed to satisfy the requirements under F.R.Civ.P. 60(b) and Rules of Practice and Procedure in Bankruptcy Rule 9024.[3] Alternatively, we hold LB & B is barred from presenting new theories of recovery by the claim preclusion principle.

1. We have jurisdiction to consider this matter under 28 U.S.C. § 1334(b) and the General Order of reference to this Court No. 45. This is a core matter under 28 U.S.C. § 157(b)(2)(A). This Memorandum Decision constitutes findings of fact and conclusions of law under F.R. Civ.P. 52 as made applicable by Rules of Practice and Procedure in Bankruptcy Rule 7052.

2. 11 U.S.C. § 506(c), **Determination of secured status,** provides:

(c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

3. Rules of Practice and Procedure in Bankruptcy Rule 9024, **Relief from Judgment or Order,** provides:

Rule 60 F.R.Civ.P. applies in cases under the Code except that (1) a motion to reopen a case under the Code or for the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one year limitation prescribed in Rule 60(b), (2) a complaint to revoke a discharge in a chapter 7 liquidation case may be filed only within the time allowed by § 727(e) of the Code, and (3) a complaint to revoke an order confirming a plan may be filed only within the time allowed by § 1144 or § 1330.

F.R.Civ.P. Rule 60(b), **Mistakes; Inadvertence; Excusable Neglect; Newly discovered Evidence; Fraud, etc.,** provides in pertinent parts:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time ... A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief....

## BACKGROUND

Debtor was incorporated in Indiana in 1976 and engaged in the business of fabrication, installation, and maintenance of equipment used principally for energy and chemical industries located in California, Indiana, Illinois, Ohio, and Texas. Debtor's principal place of business was in Hammond, Indiana where it operated out of leased offices, a shop, and storage facilities.

To obtain working capital, Debtor executed security agreements and related agreements with the Bank. The Bank obtained "a security interest in all of Debtor's then existing and thereafter acquired accounts receivable, chattel paper, contract rights, general intangibles, patent, patent rights, trade names, copy-rights, inventory, machinery, equipment and proceeds thereof." LB & B's Memorandum of Law in Support of Motion for Quantum Meruit, Quasi Contract and/or Unjust Enrichment Payment of Compensation and Expenses from the [Bank], filed February 5, 1988, pages 2–3.

Prior to Debtor's bankruptcy, substantially all of Debtor's common stock was transferred to Republic Industries, Inc., an Indiana holding company. Republic Industries, Inc. also owned all of the outstanding stock of RFI Services Corporation, an Indiana corporation engaged in substantially the same kind of business as the Debtor.

According to LB & B:

The Debtor's operations were profitable between 1976 and 1981. Thereafter, the Bank required the Debtor to make substantial payments to the Bank on the Debtor's guarantee of the obligations of RFI Services Corporation. The Debtor's cash position deteriorated subsequent to the date of these payments. Eventually, the Debtor was forced to seek relief under Chapter 11 of Title 11 of the United States Code, on or about November 12, 1982.

LB & B's Memorandum, page 3. On November 12, 1982, Debtor filed for relief under Chapter 11, 11 U.S.C. §§ 101, et seq., (Chapter 11 filing).

On November 2, 1982, a telephone conversation between the Debtor's principals, the Bank's Senior Vice–President, and LB & B initiated LB & B's recruitment as the Debtor's attorney in its upcoming bankruptcy. The Bank's Senior Vice–President was the officer who regularly supervised the administration of the various loans from the Bank to the Debtor and Debtor's affiliates. This conversation resulted in LB & B and the Bank's attorney travelling together to Houston, Texas on November 3, 1982 to participate in several meetings between LB & B, Debtor's principles and controller, and the Bank's Senior Vice–President and attorney.

At one meeting, the parties discussed the financial condition of the Debtor. They also discussed the need to preserve the Bank's security interest in Debtor's property because a significant portion of the Bank's collateral consisted of its security interest in Debtor's accounts receivable, the value of which depended on the ability of the Debtor to remain in business to complete performance of jobs in progress. At the time of filing of the Chapter 11 petition, the Debtor was insolvent, unable to pay its loans, and unable to sustain its regular business operations. The Bank faced substantial losses if the Debtor was unable to remain in business and operate as a liquidating Chapter 11 to maximize the value of its accounts receivable.

A later meeting was held between the Bank's Senior Vice–President, Bank's attorney, and LB & B to discuss LB & B's pre-employment concern; namely, in the event the Debtor was unable to reorganize and was forced to liquidate, LB & B might not be paid because all of Debtor's assets were subject to the Bank's security interest. LB & B interpreted this meeting to be an assurance that it would be paid its fees and expenses. Accordingly, it agreed to be retained by the Debtor. LB & B submitted an affidavit from the Bank's Senior Vice–President. In the affidavit, the Bank's "unauthorized" agent avers he "assured" and "represented" to LB & B that if the Debtor were eventually liquidated, LB & B's compensation and expenses "would and should normally be paid from the proceeds

of the Debtor's assets received by a Court-appointed Trustee or by the Bank." LB & B's § 506(c) Motion, paragraph 5, at page 3. The affidavit further stated that the Bank's Senior Vice–President agreed that LB & B could be paid a $10,000.00 retainer by the Debtor from property subject to the Bank's cash collateral. The $10,000.00 retainer was paid to LB & B and to our knowledge has been kept by LB & B.

On November 10, 1982, LB & B and the Bank's Senior Vice–President met with the Bank's Executive Loan Committee and agreed to the terms and conditions of the use of the Bank's cash collateral. LB & B's Memorandum, page 6. On November 30, 1982 and February 15, 1983, Orders were entered by the Court to authorized the Debtor, as DIP, to use the cash collateral. In exchange for the Bank's consent to the use of cash collateral, the Bank was given "a security interest, on a post-petition basis, in all of Debtor's present and future accounts and in all property of the Debtor in which the Bank held a security interest at the time of the filing of the petition for relief." LB & B's Memorandum, page 3.

Absent the continuation of the Debtor's business operations under an orderly liquidating Chapter 11, all parties agree the Bank would not have realized the extent of proceeds from Debtor's account receivables and sale of assets that it did. Indeed, accounts receivable collection and liquidation of assets during Debtor's Chapter 11 produced approximately one (1) million dollars in cash for the Bank. Although some post-petition revenue was lent by the Bank for the DIP's continued operation and preservation of the Bank's accounts receivable, the Bank received a net reduction of $315,000.00 in Debtor's indebtedness to it prior to the Debtor's conversion to Chapter 7.

In its § 506(c) motion, LB & B alleged it had an express contract with the Bank because:

> [the Bank] expressly consented to the payment of your Applicant's (LB & B's) fees from the proceeds of the Debtor's assets subject to its security interest in

the event of liquidation of the business. Your Applicants relied upon such assurances and representations of the Bank in rendering legal services to the Debtor throughout the course of this Chapter 11 case. At no time did the Bank attempt to repudiate or withdraw such assurances and representations.

LB & B's § 506(c) Motion, paragraphs 5, 6, at page 3.

LB & B requested compensation from the Bank in the sum of $63,435.50, less the $10,000.00 retainer received prior to the commencement of the case, and advanced out-of-pocket expenses in the amount of $2,715.33.

On August 21, 1987, we held an evidentiary hearing and from the bench sustained the Bank's objections to LB & B's fee request on two grounds. First, we found the absence of an agreement between LB & B and the Bank or consent by the Bank. Second, we found the Bank's Senior Vice–President lacked the apparent authority to bind the Bank to the alleged agreement. In dicta, we also ruled that there was insufficient evidence to show the attorney's fees benefited the estate. Accordingly, we refused to make a "benefit" finding.

## CLAIMS OF THE PARTIES

On January 22, 1988, the Bank filed two motions: "Motion to Dismiss [LB & B's] Application for Attorney Fees" and "Motion for Attorneys Fees and Sanctions."

The Bank's sanctions motion stated it was in response to LB & B's "Motion of [LB & B] for Quantum Meruit, Quasi–Contract and/or Unjust Enrichment Payment of Compensation and Expenses From the [Bank]." It represented LB & B's motion was filed with the Court on November 23, 1987 when, in fact, there is no docket entry that LB & B's quantum meruit motion was filed prior to the Bank's opposition motions. We note that LB & B's February 5, 1988 quantum meruit motion was accompanied by a memorandum dated November 20, 1987. To avoid speculation that the parties had erroneously assumed that LB & B had filed its quantum meruit motion with the Court prior to the Bank's opposition in this

proceeding, we determine such irregularity to be de minis and treat the current posture of these motions as a request for our reconsideration on the merits.

The Bank seeks a dismissal of LB & B's quantum meruit motion under Rules of Practice and Procedure in Bankruptcy Rule 7008 and F.R.Civ.P. 8.[4] The Bank seeks attorney's fees and costs as sanctions against LB & B based on allegations that LB & B's motion was filed in bad faith, groundless in fact, unwarranted in existing or modified law, and was instituted for the improper purpose of harassment against the Bank. The Bank argues LB & B's quantum meruit motion is barred on the grounds of res judicata because "[t]he only difference between the two Fee Applications is that LB & B is arguing different legal theories for recovery of its fees but relying on the same facts to support those theories." "Memorandum In Support Of [Bank's] Motion To Dismiss," page 3. Specifically, the Bank claims the following elements of res judicata are present: a final hearing on the merits of LB & B's § 506(c) application; identical operative facts in the § 506(c) motion and quantum meruit motion; and, identical parties.

On February 5, 1988, LB & B filed its quantum meruit motion and memorandum. Although we had ruled from the bench that a contract did not exist between the Bank and LB & B, LB & B claims it is entitled to compensation because: LB & B's reliance on the assurances from the Bank's Senior Vice–President and Executive Loan Committee was reasonable; the Bank knowingly accepted the benefits of LB & B's representation; the Bank failed to challenge or correct LB & B's assumption that it would be paid by the Bank; LB & B was not on notice that it might not receive compensation in the event the DIP was converted to Chapter 7 and, it would be unjust to permit the Bank to retain the benefit conferred from LB & B's services while denying LB & B's reasonable expectancy of receiving compensation. LB & B seeks to invoke the application of the equitable principle that "when one renders services that produce a benefit, one should be compensated for the rendering of such services." LB & B's quantum meruit memorandum page 11.

On March 21, 1988, LB & B filed its "Response in Opposition To [Bank's] Motion To Dismiss and Application For Attorney's Fees and Sanctions." LB & B represents in paragraph 1 of this motion that it filed its quantum meruit motion with the Court on November 23, 1987. The docket does not reflect this filing until February 5, 1988. It is possible LB & B's quantum meruit motion was misfiled because affiliates of the Debtor are also in bankruptcy. LB & B argues the Bank's motion for

---

**4.** Rules of Practice and Procedure in Bankruptcy Rule 7008, **General Rules of Pleading**, provides:

(a) APPLICABILITY OF RULE 8 F.R.CIV.P. Rule 8 F.R.Civ.P. applies in adversary proceedings. The allegation of jurisdiction required by Rule 8(a) shall also contain a reference to the name, number, and chapter of the case under the Code to which the adversary proceeding relates and to the district and division where the case under the Code is pending. In an adversary proceeding before a bankruptcy judge, the complaint, counterclaim, cross-claim, or third-party complaint shall contain a statement that the proceeding is core or non-core and, if non-core, that the pleader does or does not consent to entry of final orders or judgment by the bankruptcy judge.

(b) ATTORNEY'S FEES. A request for an award of attorney's fees shall be pleaded as a claim in a complaint, cross-claim, third-party complaint, answer, or reply as may be appropriate.

COMMITTEE NOTE
Proceedings before a bankruptcy judge are either core or non-core. 28 U.S.C. § 157. A bankruptcy judge may enter a final order or judgment in a core proceeding. In a non-core proceeding, absent consent of the parties, the bankruptcy judge may not enter a final order or judgment but may only submit proposed findings of fact and conclusions of law to the district judge who will enter the final order or judgment. 28 U.S.C. § 157(c)(1). The amendment to subdivision (a) of this rule requires an allegation as to whether a proceeding is core or non-core. A party who alleges that the proceeding is non-core shall state whether the party does or does not consent to the entry of a final order or judgment by the bankruptcy judge. Failure to include the statement of consent does not constitute consent. Only express consent in the pleadings or otherwise is effective to authorize entry of a final order or judgment by the bankruptcy judge in a non-core proceeding. Amendments to Rule 7012 require that the defendant admit or deny the allegation as to whether the proceeding is core or non-core.

sanctions is premature and would be moot in the event LB & B prevails on the merits. LB & B's response to the Bank's motion to dismiss includes the following paraphrased statements:

> 4. LB & B's original request for compensation and expenses constitute claims against Debtor's estate under §§ 502 and 506. The Court has the discretion to reconsider its rulings on claims under Rules of Practice and Procedure in Bankruptcy Rules 3008 [5] and § 502(j).[6]
>
> 5. Although **Res judicata** is an affirmative defense under F.R.Civ.P. 8 and Rules of Practice and Procedure in Bankruptcy Rule 7008, this does not provide the basis for a motion to dismiss LB & B's motion for reconsideration.
>
> 6. The Court should not let form prevail over substance or the prevention of substantial justice from being rendered by technical considerations.

See, LB & B's "Response in Opposition To [Bank's] Motion To Dismiss and Application For Attorney's Fees and Sanctions," page 2.

On March 28, 1988, the Bank filed its "Supplemental Memorandum in Support of [the Bank's] Motion to Dismiss." The Bank quickly countered LB & B's request for reconsideration under § 502 in Paragraph 4 of its response by stating the request is not supported in the record or by the law. First, LB & B's fee applications were grounded on § 506(c) and not § 502. Secondly, LB & B's fee applications were against the Bank and were not claims against the Debtor or Debtor's estate. Moving to the critical issues of reconsideration, the Bank made the following paraphrased arguments:

> LB & B's motion to reconsider is barred by their failure to move within ten days of the Court's entry of judgment under Rules of Practice and Procedure in Bankruptcy Rule 9023 [7] and F.R.Civ.P. 59.[8] Rules of Practice and Procedure in Bankruptcy Rule 7012(b)(6) [9] is an appropriate

---

**5.** Rule 3008, **Reconsideration of Claims,** provides:

A party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate. The court after a hearing on notice shall enter an appropriate order.

**6.** 11 U.S.C. § 502(j), **Allowance of claims or interests,** provides in part:

(j) A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case....

**7.** Rule 9023, **New Trials; Amendment of Judgments,** provides:

Rule 59 F.R.Civ.P. applies in cases under the Code, except as provided in Rule 3008.

**8.** F.R.Civ.P. 59, **New Trials; Amendment of Judgment,** is made applicable by Bankruptcy Rule 9023 and provides in part:

(a) **Grounds.** A new trial may be granted to all or any of the parties and on all or part of the issues ... (2) in an action tried without a jury, for any of the reasons for which rehearings have been heretofore been granted in suits in equity in the courts of the United States. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

(b) **Time for Motion.** A motion for a new trial shall be served not later than 10 days after the entry of the judgment....

(d) **On initiative of Court.** Not later than 10 days after entry of judgment the court of its own initiative may order a new trial for any reason for which it might have granted a new trial on motion of a party. After giving the parties notice and an opportunity to be heard on the matter, the court may grant a motion for a new trial, timely served, for a reason not stated in the motion. In either case, the court shall specify in the order the grounds therefor.

(e) **Motion To Alter or Amend a Judgment.** A motion to alter or amend the judgment shall be served not later than 10 days after the entry of the judgment.

**9.** Rule 7012, **Defenses and Objections—When and How Presented—By Pleading or Motion—Motion for Judgment on the Pleadings,** provides:

(a) **WHEN PRESENTED.** If a complaint is duly served, the defendant shall serve an answer within 30 days after the issuance of the summons, except when a different time is prescribed by the court. The court shall prescribe the time for service of the answer when service of a complaint is made by publication or upon a party in a foreign country. A party served with a pleading stating a cross-claim shall serve an answer thereto within 20 days after service. The plaintiff shall serve a reply to a counterclaim in the answer within 20 days after service of the answer or, if a reply is ordered by the court, within 20 days after service of the order, unless the order otherwise directs. The United States or an officer or agency thereof shall serve

vehicle for the Bank to raise its affirmative defense of res judicata to dispose of LB & B's quantum meruit motion. "Supplemental Memorandum in Support of [the Bank's] Motion to Dismiss," pages 2–4.

A pre-hearing on LB & B's objections to the Bank's sanctions was held on March 28, 1988. After the hearing, the parties stipulated "there is no need for submission of evidence at this point in the proceedings as the dispute involves a question of law only." We entered an Order on March 29, 1988 which set a briefing schedule and took the matter under advisement.

On April 20, 1988, the Bank filed its "Supplemental Memorandum in Support of [Bank's] Motion to Dismiss." It reiterated that it is undisputed that LB & B's quantum meruit theory is based on the same operative facts presented at the earlier § 506 hearing, and, as such, res judicata bars its relitigation because LB & B should have presented all of its theories of recovery at one hearing. The Bank concludes

"[t]his Court has no discretion in the matter since the operative facts claimed by LB & B to support its Second Fee Application (quantum meruit motion) are exactly the same facts alleged in its First Fee Application." Supplemental Memorandum in Support of [Bank's] Motion to Dismiss, page 4 (parenthetical supplied for clarity).

On May 18, 1988, LB & B filed its "Supplemental Response In Opposition to [Bank's] Motion to Dismiss." LB & B maintains it has a right to a reconsideration under § 502(j) supra, and Bankruptcy Rule 3008 supra, because its § 506(c) application against the Bank constitutes a "claim" against Debtor's estate within the meaning of 11 U.S.C. § 101(4).[10] LB & B argues that the wording of § 506(c)'s "the trustee may recover **from property securing an allowed secured claim**," (emphasis added) supports its interpretation that a § 506(c) claim is a claim against the estate, thus bringing Bankruptcy Rule 3008 into play. In the event we· determine Bankruptcy

---

an answer to a complaint within 35 days after the issuance of the summons, and shall serve an answer to a cross-claim, or a reply to a counter-claim, within 35 days after service upon the United States attorney of the pleading in which the claim is asserted. The service of a motion permitted under this rule alters these periods of time as follows, unless a different time is fixed by order of the court: (1) if the court denies the motion or postpones its disposition until the trial on the merits, the responsive pleading shall be served within 10 days after notice of the court's action; (2) if the court grants a motion for a more definite statement, the responsive pleading shall be served within 10 days after the service of a more definite statement.

**(b) APPLICABILITY OF RULE 12(b)-(h) F.R.Civ.P.** Rule 12(b)-(h) F.R.Civ.P. applies in adversary proceedings. A responsive pleading shall admit or deny an allegation that the proceeding is core or non-core. If the response is that the proceeding is non-core, it shall include a statement that the party does or does not consent to entry of final orders or judgment by the bankruptcy judge. In non-core proceedings final orders and judgments shall not be entered on the bankruptcy judge's order except with the express consent of the parties.

COMMITTEE NOTE

The amendment to subdivision (b) requires a response to the allegation that the proceeding is core or non-core. A final order of judgment may not be entered in a non-core proceeding heard by a bankruptcy judge unless all parties expressly consent. 28 U.S.C. § 157(c).

F.R.Civ.P. 12(b)(6), **Defenses and Objections—When and How Presented—By Pleading or Motion—Motion for Judgment on the Pleadings,** provides:

**(b) How Presented.** Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except the following defenses may at the option of the pleader be made by motion: (6) failure to state a claim upon which relief can be granted.... If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

10.  11 U.S.C. § 101(4), defines claim to mean:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;

Rule 3008 is not applicable because a § 506(c) determination is not a claim against the estate but against a secured creditor, LB & B advances that since § 502(j) uses the word "claim" as opposed to the phrase "claim against the estate" used in Bankruptcy Rule 3008, a § 506(c) claim falls within the broad definition of a claim in § 101(4). Under the language of § 101(4) and § 506(c), LB & B argues the Bankruptcy Court can reconsider its previous allowance or disallowance of a § 506(c) claim.

LB & B invokes F.R.Civ.P. 60(b)(6) as a "catch-all" provision that gives this Court ample power to vacate prior judgments when necessary to reach a just result. Failing that, LB & B requests that we exercise our "inherent power" to reconsider prior orders.

## DISCUSSION

### A. RECONSIDERATION

In *Central Illinois Co. v. Irving Trust Co. (In re Pottasch Bros. Co. Inc.)*, 79 F.2d 613, 101 ALR 1182 (2d Cir.1935), Circuit Judge Learned Hand of the Second Circuit held a Bankruptcy Referee has the same "ancient and elementary" power over its orders as a District Court Judge has:

On the other hand, if a referee is a court at all, there is no warrant for saying because an appeal lies from its orders, that he has not the ancient and elementary power to reconsider those orders, nor the faintest reason why he should not do so. That power is of course limited in duration when there are terms of court, but in bankruptcy there are none.... As to a referee's being a court, not only 'may' he be the 'court of bankruptcy,' ... he is affirmatively "invested ... with jurisdiction to ... perform such part of the duties ... as are by this act [title] conferred on courts of bankruptcy and as shall be prescribed by rules or orders of the courts of bankruptcy of their respective districts...." Thus it seems to us a perversion of General Order 27 ... to seize upon the mere chance that appeals from referees were called 'reviews,' and use it to strip them of powers so common

and so necessary to the reasonable exercise of their jurisdiction. Why it is desirable that their orders, **ruat coelum,** should be as immutable as the Twelve Tables, once the ink is dry, we cannot understand.

Id., 79 F.2d at 616 (2d Cir.1935) (Judge Learned Hand) (citations omitted). Accord, *Castaner v. Mora*, 234 F.2d 710, 714, CCH BLR, paragraph 58748 (1st Cir.1956) (Referee had power, after three (3) years, to reconsider secured creditor's claim.).

In *Wayne United Gas Company v. Owens–Illinois Glass Company*, 300 U.S. 131, 57 S.Ct. 382, 81 L.Ed. 557, 33 AmBR(ns) 1 (1937), the Supreme Court reversed a District Court's conclusion that a Bankruptcy Court's second order was a mere nullity because the Bankruptcy Court was without jurisdiction to entertain an untimely petition for rehearing after time for appeal had expired. Reconsideration is within the sound discretion of the Court:

A court of equity may grant a rehearing, and vacate, alter, or amend its decree, after an appeal has been perfected and after the time for appeal has expired, but not after the expiration of the term at which the decree was entered. It is true the bankruptcy court applies the doctrines of equity, but the fact that such a court has no terms, and sits continuously, renders inapplicable the rules with respect to the want of power in a court of equity to vacate a decree after the term at which it was entered has ended.... But we think the court has the power, for good reason, to revise its judgments upon seasonable application and before rights have vested on the faith of its actions. Courts of law and equity have such power, limited by the expiration of the term at which the judgment or decree was entered and not by the period allowed for appeal or by the fact that an appeal has been perfected. There is no controlling reason for denying a similar power to a court of bankruptcy or for limiting its exercise to the period allowed for appeal. The granting of a rehearing is within the court's sound discretion, and a refusal to entertain a

motion therefor, or the refusal of the motion, if entertained, is not the subject of appeal. A defeated party who applies for a rehearing and does not appeal from the judgment or decree within the time limited for so doing, takes the risk that he may lose his right of appeal, as the application for rehearing, if the court refuse (sic) to entertain it, does not extend the time for appeal. Where it appears that a rehearing has been granted only for that purpose the appeal must be dismissed. The court below evidently thought the case fell within this class. On the contrary, the rule which governs the case is that the bankruptcy court, in the exercise of a sound discretion, if no intervening rights will be prejudiced by its action, may grant a rehearing upon application diligently made and rehear the case upon the merits; and even though it reaffirms its former action and refuses to enter a decree different from the original one, the order entered upon rehearing is appealable and the time for appeal runs from its entry.

Id., 300 US at 136–138, 57 S.Ct. at 384–385, 81 L.Ed. at 560–561 (1937) (footnote omitted). *Accord, Federal Land Bank of Springfield v. Hansen*, 113 F.2d 82, 84, CCH BLR, paragraph 52539 (2d Cir.1940) (citing *Wayne supra*, Bankruptcy Court has continuous power to modify its own orders, if no intervening rights are disturbed).

Over the years the Courts have expounded on the general principles on reconsideration. Recently the Seventh Circuit held, in a case involving service of process on foreign corporations, that waiver of a service of process argument in the District Court and its attempted introduction into the motion for reconsideration is an improper vehicle to introduce evidence previously available or to tender new legal theories. *Publishers Resource, Inc. v. Walker–Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir.1985) (quoting *Keene Corp. v. International Fidelity Insurance Co.*, 561 F.Supp. 656, 665–666 (N.D.Ill.1982), aff'd, 736 F.2d 388 (7th Cir.1984)." *Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 404 (7th Cir. 1986); Accord, *Rothwell Cotton Co. v. Ro-*

*senthal & Company*, 827 F.2d 246, 251–252 (7th Cir.1987) reh'g and reh'g en banc denied 835 F.2d 710 (7th Cir.1988); *Hall v. Gus Const. Co., Inc.*, 842 F.2d 1010, 1017, 146 FEP 573 (8th Cir.1988); *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir.1988).

In *Evans, Inc. v. Tiffany & Co.*, 416 F.Supp. 224 (N.D.Ill.1976), the Court reminded us of the tension between finality and reconsideration:

Motions made under Fed.R.Civ.P. 52(b) and 59(a) are not intended merely to relitigate old matters nor are such motions intended to allow the parties to present the case under new theories. Instead, these motions are intended to correct manifest errors of law or fact or to present newly discovered evidence....

Id., 416 F.Supp. at 244. In *Evans*, the Court cited ample opportunity and actual failure to present an argument at trial as something that "appears to have been a conscious tactical decision, since Tiffany relied on the fact that Evans did not pay Howard Storch a commission on the Tiffany transaction as an indication that no contract existed. This being the case, Tiffany should not now be given the opportunity to reopen the record to present yet another wholly new theory." Id., at 245.

Failure to raise evidentiary matters to the Court in a timely way may prevent the exercise of reconsideration. For example, in *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir.1986), the Appeals Court upheld the District Court's refusal to consider a guarantor's untimely challenge through a "Motion for New Trial and/or to Alter or Amend Judgment and for Additional Time to File Supporting Affidavits." The Court rejected the guarantor's attempt to have its untimely motion considered as an appropriate evidentiary counter to an affidavit presented by FDIC before the Court entered summary judgment against the guarantor in a foreclosure action.

In a line of recent cases from within the Seventh Circuit, the failure to present all legal and equitable theories that were or could have been raised during trial may

constitute a waiver which may not be rectified by an after judgment motion for reconsideration. For example, the Judge Schmetterer in *Lesman v. Mitchell (In re Mitchell)*, 70 B.R. 524 (Bkrtcy.N.D.Ill. 1987), refused a landlord's attempt to re-open a dischargeability judgment of a tenant's debt for inter alia:

> Plaintiff next asserts that the Court erred in the September 5, 1986 Order in not giving effect to the terms of the lease and awarding Plaintiff her attorney's fees pursuant to that lease. Plaintiff then rehashes arguments originally rejected at trial and raises an apparently new argument of detrimental reliance. Plaintiff may not use this motion (motion to amend or modify judgment) to raise arguments that could and should have been made before judgment issued, or to argue a case under a new legal theory (citations omitted).... Moreover, Plaintiff presents no analysis or authority to demonstrate the court erred in finding that there was no agreement as to attorney's fees. Therefore, the Court will not alter this holding of the September 5, 1986 Order.

Id., 70 BR at 526. (parentheticals supplied). See, *Bally Export Corp. v. Balicar, Ltd., supra*, 804 F.2d at 404; *Publishers Resources, Inc. v. Walker–Davis Publications, Inc., supra*, 762 F.2d at 561; *Keene Corp. v. International Fidelity Insurance Co., supra*, 561 F.Supp. at 665–666. What is history is history, and Courts should not forget it, nor allow a party to relitigate it.

Recently, the Seventh Circuit, in *Gekas v. Pipin (Matter of Met-L-Wood Corp.)*, 861 F.2d 1012, 18 BCD 1045, CCH BLR, paragraph 72511 (7th Cir.1988), cert. denied, —— U.S. ——, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989), expressed that the Bankruptcy Court's inherent power to reconsider its orders has been merged into the Bankruptcy Rules of Practice and Procedure in Bankruptcy and Federal Rules of Civil Procedure. After affirming the District Court's dismissal of a bankruptcy trustee's fraud suit as a "thinly disguised collateral attack on the judgment confirming a [§ 363] sale," Circuit Judge Posner made the following remark on the Bank-

ruptcy Court's "inherent power" to reconsider prior orders confirming sales:

> [L]et us now consider whether his [trustee's] motion under Rule [F.R.Civ.P.] 60(b) to revoke the bankruptcy judge's approval of the sale was properly denied. There is a preliminary question. Long before there was a Rule 60(b), bankruptcy courts exercised what they conceived to be, and what in fact has traditionally been regarded as, an inherent judicial power to reconsider their judgments within a reasonable time, including judgments confirming sales. See 4B Collier on Bankruptcy § 70.98[17], at pp. 1183–94 (14th ed. 1978). Now that there is a Rule 60(b), expressly applicable to bankruptcy as we have seen, the inherent power seems otiose; and although the cases continue to refer to it, they define it in terms of Rule 60(b). See, e.g., *In re Chung King, Inc.*, 753 F.2d 547, 549–50 (7th Cir.1985). As a natural development from those cases, as well from the text of Bankruptcy Rule 9024, which applies Rule 60(b) to bankruptcy proceedings, we hold that confirmed sales—which are final judicial orders—can be set aside only under Rule 60(b). We conclude that the old inherent power to reconsider bankruptcy orders has been merged into the rule.

Id., 861 F.2d at 1018. (parenthetical supplied for clarity).

The narrow holding in *Met–L–Wood* is that confirmed § 363 sales may only be reconsidered by the Bankruptcy Court under F.R.Civ.P. Rule 60(b) and Bankruptcy Rules of Practice and Procedure in Bankruptcy Rule 9024. Beyond this narrow holding, Circuit Judge Posner implies that the Bankruptcy Court no longer has an inherent power to reconsider any of its prior orders, rather its post judgment reconsideration power is now circumscribed to that conferred to it through Bankruptcy Rule 9024 and F.R.Civ.P. Rule 60(b). We question whether Posner's remarks may be Dicta given the unique and higher considerations of finality usually accorded to unappealed § 363 sales. In *Matter of Chung King, Inc.*, 753 F.2d 547 (7th Cir.1985),

cited by *Met–L–Wood,* the Court was careful to point out that concerns of finality in confirmed sales narrows the Bankruptcy Court's discretionary power to vacate:

> It is important to define the specific issue before us in order to ensure that the appropriate legal standards are applied.... We are reviewing the setting aside of an order confirming a sale involves different concerns and less discretion on the bankruptcy judge's part than the denial of confirmation of a sale in the first instance ... A bankruptcy court may vacate a prior order confirming a sale, however, only in very limited circumstances in the exercise of its powers as a court of equity.... This Court stated the relevant standard in *Webcor [In re Webcor,* 392 F.2d 893 (7th Cir.1968)] as: '[o]nce the sale ... [is] confirmed, the existence of fraud, mistake or a like infirmity would be necessary to set [a] confirmed sale aside.' 392 F.2d at 899. See Bankruptcy Rule 9024 (applying to bankruptcy cases Fed.R.Civ.Pro. 60, which allows a judgment to be set aside for '(1) mistake, inadvertence, surprise or excusable neglect ... (3) fraud, misrepresentation ... (6) any reason justifying relief.... Fed.R.Civ.Pro. 60(b)). As explained in *Webcor,* '[i]f parties are to be encouraged to bid at judicial sales there must be stability in such sales and a time must come when a fair bid is accepted and the proceedings are ended.' *In re Webcor,* 392 F.2d at 899. This policy of finality protects confirmed sales unless 'compelling equities' outweigh the interests in finality.... While this equitable determination is largely within the province of the bankruptcy court, *Webcor,* 392 F.2d at 898, the court's range of discretion on this matter is quite narrow. The failure to apply the appropriate standard or the vacating of a sale because of minor errors would amount to an abuse of discretion.

*Matter of Chung King, Inc.,* 753 F.2d at 549–550 (7th Cir.1985) (citations omitted, parenthetical supplied for clarity).

Moreover, neither F.R.Civ.P. Rules 59(e), 60(b) nor Bankruptcy Rules of Practice and Procedure in Bankruptcy Rule 9023, 9024, expressly describe a motion for reconsideration. *Sanders v. Clemco Industries,* 862 F.2d 161, 168 (8th Cir.1988).

Although we question whether this Court's inherent power to reconsider its prior orders is "otiose" because it has been "merged" into applicable procedural rules, see *Met–L–Wood* supra, as an exercise of caution, we heed Circuit Judge Posner's remarks and test LB & B's reconsideration motion by the principles that govern F.R. Civ.P. Rules 59(e), 60(b) and Bankruptcy Rules of Practice and Procedure in Bankruptcy Rule 9023, 9024.

The Eighth Circuit recently summed the distinction between F.R.Civ.P. Rules 59(e) and 60(b) in *Sanders v. Clemco Industries,* 862 F.2d 161, 168–169 (8th Cir.1988):

> This case illustrates the dangers of filing a self-styled 'motion for reconsideration' that is not described by any particular rule of federal procedure. Federal courts have construed this type of motion as arising under either Rule 59(e) (motion to alter or amend the judgment) or Rule 60(b) (relief from judgment for mistake or other reason).... The two rules serve different purposes and produce different consequences, both substantive and procedural ... When the moving party fails to specify the rule under which it makes a postjudgment motion, that party leaves the characterization of the motion to the court's somewhat unenlightened guess, subject to the hazards of the unsuccessful moving party losing the opportunity to present the merits underlying the motion to an appellate court because of delay. For example, if the appellate court characterizes the motion as one under Rule 59(e) ... that motion tolls the running of the thirty days to appeal the judgment, and the clock starts anew at the entry of the order disposing of the motion-requiring a notice of appeal following entry of the order.... But if the motion is untimely made, beyond the ten-day period, the district court loses jurisdiction over that motion and ruling upon it becomes a nullity.... Moreover, when thirty days has run from the initial judgment, the

time for appeal in the ordinary (not relating to the United States) civil action has elapsed.... By contrast, when a motion for reconsideration made after ten days is deemed a motion for relief from the judgment under Rule 60(b), the ten-day rule does not govern that motion. To prevent its use as a substitute for a timely appeal on the underlying merits, a Rule 60(b) motion must be made within thirty days of the judgment if the alleged error could have been corrected by appeal of that judgment ... The rule specifically provides, however, that even a timely motion under it 'does not affect the finality of a judgment or suspend its operation.' Fed.R.Civ.P. 60(b). Thus, unlike a Rule 59(e) motion, a Rule 60(b) motion does not toll the time for appeal of the judgment.... Moreover, an appeal from the denial of a motion made under Rule 60(b) does not raise the underlying judgment for review; it presents the appellate court only with the question of whether the trial court abused its discretion in ruling on the motion....

Id., 862 F.2d at 168–169 (8th Cir.1988) (citations and footnotes omitted).

Although the Seventh Circuit has expressed its displeasure with moving parties whom fail to denominate their post-judgment motions under the appropriate Rule, the Seventh Circuit tempers its displeasure of such practice:

It would make life a good deal easier for all concerned if parties moving under Rule 59(e) would always caption such motions 'motions to alter or amend judgment,' rather than 'motion to reconsider,' and thereby dispel any doubt whether the motion is under Rule 59(e) or Rule 60(b)—rules with very different procedural consequences, as this case illustrates. But the caption is not essential. One must look to the body of the motion, and see what the movant wants.

*A.D. Weiss Lithograph Co. v. Illinois Adhesive Products Co.*, 705 F.2d 249, 249–50 (7th Cir.1983) (per curiam). Accord, *Marane, Inc. v. McDonald's Corp.*, 755 F.2d 106, 111 at n. 3 (7th Cir.1985) (citing *Bank of California v. Arthur Andersen & Co.*,

709 F.2d 1174, 1176 (7th Cir.1983) ("[S]ubstance controls in determining whether a postjudgment motion is a Rule 59(e) or a Rule 60 motion."); *Finch v. City of Vernon*, 845 F.2d 256, 258 (11th Cir.1988).

A motion for reconsideration is a Rule 59(e) motion even where (as here) the motion neither cites the rule nor asks the court in so many words to alter or amend its judgment (the language in Rule 59(e); for "all substantive motions served within 10 days of the entry of a judgment will be treated as based on Rule 59," *Charles v. Daley*, 799 F.2d 343, 347 (7th Cir.1986). By substantive motion we mean one that if granted would result in a substantive alteration in the judgment rather than just in a correction of a clerical error or in a purely procedural order such as one granting an extension of time within which to file something. See *id.* at 347; *A.D. Weiss Lithograph Co. v. Illinois Adhesive Products Co.*, 705 F.2d 249, 250 (7th Cir.1983) (per curiam).

*United States v. Gargano*, 826 F.2d 610, 611 (7th Cir.1987). Accord, *Western Industries, Inc. v. Newcor Canada Limited*, 709 F.2d 16 (7th Cir.1983) (per curiam) ("Post-judgment motions filed within 10 days should, where possible, be construed as Rule 59(e) motions to avoid otherwise endless hassles over proper characterization." Id., at 17).

In the matter sub judice, we are not dealing with a Rule 59(e) motion to reconsider or correct errors of law because LB & B did not file their motion within 10 days of the judgment:

A Rule 59(e) motion to alter or amend judgment, if filed within 10 days of the judgment, tolls the 30–day appeal time; and a motion to reconsider is a motion to alter or amend within the meaning of Rule 59(a) (sic).

*Financial Services Corp. of the Midwest v. Weindruch*, 764 F.2d 197, 198 (7th Cir. 1985) (per curiam). In the matter sub judice we can only hold that LB & B failed to toll the appeal period. See, *Venable v. Haislip*, 721 F.2d 297, 299 (10th Cir.1983)

The Seventh Circuit also places the responsibility squarely on the trial court to comply with its rules of procedure and finality of judgment. *North Central Illinois Laborer' District Council v. S.J. Groves & Sons Co., Inc.,* 842 F.2d 164, 167 (7th Cir.1988). In the context of Rule 60(b), finality is a very important factor:

> Judgments in civil cases fix the rights of parties and entitle them to go about their lives. They may be reopened only for extraordinary reasons.... There are good reasons for the stringent limits on reopening a final judgment. The rule that the final judgment governs the future induces the parties to focus all of their efforts in a single proceeding. If they know that the judgment will establish their rights once and for all, they will bring to bear the information and energies necessary to produce an informed decision. If they believe that they can have a second try, they are more likely to skimp the first time around, and as a result the judicial process will become less accurate. True, mistakes are bound to occur. There are few perfect trials. But the inevitable shortfalls of the legal system do not call for revisiting judgments. Second proceedings have problems of their own.... These considerations inform the development of the law under Rule 60(b), as they inform principles of issue and claim preclusion, the interpretation of statutes of limitations, and other doctrines of repose in civil and criminal litigation.... A motion under Rule 60(b) often puts to a court a question without a right answer. The district judge must weigh incommensurables—the value of finality, the probability that an error affected the outcome of the proceeding, the probability that a second go-round would produce a 'better' outcome, the costs of that second proceeding to the parties (and ultimately to society as the finality of judgments is undercut). Dealing with these intersecting planes of legal argument is a task of great subtlety, calling on all the skills of the district judges. It is not, however, a task that gives rise to 'error' (as opposed to questionable exercise of judgment),

unless the judge leaves something important out of his analysis. This is why we have been so deferential in Rule 60(b) cases to decisions not to reopen.

*Metlyn Realty Corp. v. Esmark, Inc.,* 763 F.2d 826, 830–831 (7th Cir.1985) (citations omitted). Accord, *Margoles v. Johns,* 798 F.2d 1069, 1072 (7th Cir.1986) (per curiam), cert. denied, 482 U.S. 905, 107 S.Ct. 2482, 96 L.Ed.2d 374, reh'g denied, 483 U.S. 1056, 108 S.Ct. 31, 97 L.Ed.2d 820; *Tolliver v. Northrop Corp.,* 786 F.2d 316, 39 EPD, paragraph 35996, 40 FEP 470 (7th Cir.1986) ("We may order a case reinstated only if the district judge has abused his discretion. Indeed, 'abuse of discretion' in cases under Rule 60(b) is restricted review. It limits review to cases in which no reasonable person could agree with the district court's decision ... [D]ecision under Rule 60(b) is discretion piled on discretion, and as we said in *Metlyn* such doubly discretionary decisions stand unless the judge was very far off base—if the judge relied on forbidden factors or omitted to consider some important relevant factor." Id., 786 F.2d at 318–319); *North Central Illinois Laborers' District Council v. S.J. Groves & Sons Company, Inc.,* 842 F.2d 164, 168 (7th Cir. 1988); *Smith v. Widman Trucking & Excavating,* 627 F.2d 792, 795–796 (7th Cir. 1980).

A Rule 60(b) motion may not be used as an attempt to relitigate the merits of a judgment after the time for an appeal of that judgment has lapsed. *Ben–Shalom v. Secretary of the Army,* 826 F.2d 722, 724, 44 FEP 1016 (7th Cir.1987); *Kagan v. Caterpillar Tractor Co.,* 795 F.2d 601, 606–607 (7th Cir.1986); *Andrews v. Heinold Commodities, Inc.,* 771 F.2d 184, 188, 40 EPD, paragraph 36322 (7th Cir.1985).

An appeal from a Rule 60(b) decision does not bring the original judgment up to the circuit court for review, but only the decision on the request for relief from judgment under Rule 60(b). *Chester v. St. Louis Housing Authority,* 820 F.2d 259, 261 (8th Cir.1987), cert. denied, 484 U.S. 899, 108 S.Ct. 236, 98 L.Ed.2d 195, (citing *Fox v. Brewer,* 620 F.2d 177, 179–80 (8th Cir.1980). While a ruling on a Rule 60(b)

motion is appealable, *Browder v. Director, Department of Corrections of Illinois*, 434 U.S. 257, 263 at n. 7, 98 S.Ct. 556, 560 at n. 7, 54 L.Ed.2d 521, 530 at n. 7 reh'g denied 434 U.S. 1089, 98 S.Ct. 1286, 55 L.Ed.2d 795 (1978), a Rule 60(b) motion may not be utilized as a substitute for the appeal of the original judgment. *Andrews, Jr. v. Heinold Commodities, Inc., supra* 771 F.2d at 188 (7th Cir.1985) (citing *Ackermann v. United States*, 340 US 193, 198, 71 S.Ct. 209, 211, 95 L.Ed. 207, 210–211 (1950)); *United States v. Young*, 806 F.2d 805, 806 (8th Cir.1986) reh'g denied (8th Cir.1987) per curiam citing *Hoffman v. Celebrezze*, 405 F.2d 833, 836 (8th Cir.1969).

Unlike the "reasonable time" limitation required under Rule 60(b)(6), a Rule 60(b)(1) motion must be made within one year after the judgment. As pointed out to us by *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601 (7th Cir.1986), a litigant may not assume "reasonable time" under Rule 60(b)(6) means at least one year:

> Contrary to Kagan's belief that all motions filed within one year of the dismissal are timely under Rule 60(b)(1), "the one year period represents an extreme limit, and the motion will be rejected as untimely if not made within a 'reasonable time,' even though the one-year period has not expired." Wright & Miller, Federal Practice and Procedure, Civil § 2866, p. 232. See also, *Bank of California v. Arthur Anderson & Co.*, 709 F.2d 1174 (7th Cir.1983). "There is no hard and fast rule as to how much time is reasonable for the filing of a Rule 60(b)(6) motion; courts have found periods of as little as a few months unreasonable and have found periods of three years reasonable." *Sudeikis v. Chicago Transit Authority*, 774 F.2d 766, 769 (7th Cir. 1985). "What constitutes 'reasonable time' depends upon the facts of each case, taking into consideration the interests in finality, the reason for the delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and [the consideration of] prejudice [if any] to other parties." *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir.1981).

*Kagan v. Caterpillar Tractor Co., supra*, 795 F.2d at 610 (7th Cir.1986) (a four month delay was not "reasonable time" to make a Rule 60(b)(1) motion for reconsideration).

Of course, adequate grounds for relief under Rule 60(b)(1) will not suffice for Rule 60(b)(6)'s "any other reason" requirement. *Klapprott v. United States*, 335 U.S. 601, 614–615, 69 S.Ct. 384, 390, 93 L.Ed. 266, 266–277 (1948); *Margoles v. Johns, supra*, 798 F.2d at 1073 n. 6 (7th Cir.1986).

Relief under Rule 60(b)(6) requires "a showing of extraordinary circumstances that create a substantial danger that the underlying judgment was unjust." *Margoles v. Johns, supra*, 798 F.2d at 1073 (7th Cir.1986). *United States v. One 1979 Rolls–Royce Corniche Convertible*, 770 F.2d 713, 716 (7th Cir.1985); *Andrews, Jr. v. Heinold Commodities, Inc.*, 771 F.2d 184, 188 (7th Cir.1985). The movant bears the burden of establishing proper grounds for Rule 60 relief. *Standard Bank & Trust Co. v. Iaquinta (In re Iaquinta )*, 97 B.R. 959, 960 (Bkrtcy.N.D.Ill.1989).

When cast in substance over form, LB & B's motion for reconsideration may be construed as a request to reopen under either Rule 60(b)(1) "mistake, inadvertence, surprise, or excusable neglect," or 60(b)(6) "any other reason justifying relief from the operation of the judgment."

Ignorance or carelessness on the part of the litigant or his attorney will not prevail on a motion for relief under Rule 60(b)(1). See e.g., *North Central Illinois Laborers' District Council v. S.J. Groves & Sons Company, Inc., supra*, 842 F.2d at 167 (7th Cir.1988) (citing *Ellingsworth v. Chrysler*, 665 F.2d 180, 184 (7th Cir.1981).

> A negligent mistake, that is one evincing a lack of due care, is not a proper ground for relief under 60(b). *Bershad v. McDonough*, 469 F.2d 1333, 1337 (7th Cir. 1972). What is due care depends on the cost of an increment of care in relation to its expected benefits.

*Western Transportation Co. v. E.I. Du Pont De Nemours and Co.*, 682 F.2d 1233, 1236 (7th Cir.1982).

■ We have no doubt that had LB & B properly preserved the theories they now seek to apply to the facts presented at the original hearing, we would have granted them their fees and it pains us to not to be able to do so now. Nevertheless, it is not our job to ferret out unpresented theories, rather it is the duty of counsel and litigant alike to present all theories so that all may have an opportunity to examine fairly their merits under the microscope of trial.

LB & B simply presented one theory of recovery from the Bank under 11 U.S.C. § 506(c); namely, that it had an express contract with the Bank for its fees. LB & B neglected to exercise due care to present all available theories at the original hearing. We will not speculate why LB & B, experienced bankruptcy practitioners that they are, made a decision not to pursue all available theories including implied contract, quantum meruit, or estoppel at trial.

■ Generally, quantum meruit requires: an absence of an express contract; a benefit conferred to another; the acceptance and retention of the benefit; and, circumstances such that it would be inequitable for the other to retain the benefit without paying value for it. See e.g., *U.S. Controls Corp. v. Windle*, 509 F.2d 909, 911 (7th Cir.1975); *Goldberg v. Liston*, 431 F.2d 1101, 1103 (7th Cir.1970); *Argo Marine Systems, Inc. v. Camar Corp.*, 755 F.2d 1006, 1011 (2d Cir.1985); *B & B Mechanical Contractors, Inc. v. Hunt Brothers. Construction Co.*, 10 B.R. 671, 672 (Bkrtcy.M.D.Fla.1981); 17 CJS Contracts § 6, p. 566–576 (1963 & Supp.1989).

■ "The elements necessary to prove equitable estoppel include:

(1) a representation or concealment of material facts;

(2) the representation must have been made with knowledge of the facts;

(3) the party to whom it was made must have been ignorant of the matter;

(4) it must have been made with the intention that the other party should act upon it;

(5) the other party must have been induced to act upon it."

*Andsu, Inc. v. City of Kokomo (In re The Sassi Corp.)*, 51 B.R. 534, 543 (Bkrtcy.S.D. Ind.1983) (citations omitted). Equitable estoppel may arise when a party is silent though it had an opportunity to and a duty to speak. *Monroe County Oil Co., Inc. v. Amoco Oil Co.*, 75 B.R. 158, 162 (Bkrtcy.S. D.Ind.1987) (citations omitted). "Estoppel arises when one party's conduct leads another to believe that a right will not be enforced and causes the one so misled to act to his detriment in reliance upon his beliefs." *Courtney v. Octop, Inc. (In re Colonial Discount Corp.)*, 807 F.2d 594, 599, CCH BLR, paragraph 71552 (7th Cir. 1986), cert. denied, 481 U.S. 1029, 107 S.Ct. 1954, 95 L.Ed.2d 526 (citing *Walaschek & Associates, Inc. v. Crow*, 733 F.2d 51, 54 (7th Cir.1984).

LB & B's decision forecloses any relief under Rule 60(b)(1). Moreover, we are hard pressed to conjure an "other reason" that will permit us to cast aside our concern of finality and reopen our prior judgment under Rule 60(b)(6).

## B. CLAIM PRECLUSION

Of the various preclusion doctrines; namely, "law of the case," "equitable estoppel" or "estoppel in *pais*," "estoppel by silence," judicial estoppel," "collateral estoppel" or "issue preclusion," and, "res judicata" or "claim preclusion," we hold principles of res judicata, more properly called claim preclusion, controls the outcome of this matter.

■ "Law of the case" doctrine does not apply to the matter sub judice. "Law of the case" applies when an appellate court, or the court of last resort of a particular unappealed proceeding, has decided an issue, the trial court, at a later stage of the litigation is under a duty to follow the appellate court's ruling on the issue absent superseding intervening variable. See, *Arizona v. California*, 460 U.S. 605, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983); *Diaz v. Indian Head, Inc.*, 686 F.2d 558, 562–563 (7th Cir.1982); *United States v. Cirami*, 563 F.2d 26, 32–33, and n. 6 (2d Cir.1977); *Munroe v. Post*, 102 F.2d 686, 688, 40 AFTR.2d, paragraph 5677, 77 USTC, para-

graph 9632 (2d Cir.1939). See also, 1B *Moore's Federal Practice*, paragraph 0.404(1), page 117 (2d ed. 1983).

"Equitable estoppel" or "estoppel in *pais*," "precludes a litigant from asserting a claim or defense which might otherwise be available to him against another party who has detrimentally altered her position in reliance on the former's misrepresentation or failure to disclose some material fact." *Portmann v. United States*, 674 F.2d 1155, 1158 (7th Cir.1982). Estoppel "arises only when one has so acted as to mislead another and the one thus misled has relied upon the action of the inducing party to his prejudice." *Advance Hydraulics, Inc. v. Otis Elevator Co.*, 525 F.2d 477, 479 (7th Cir.1975), cert. denied, 423 U.S. 869, 96 S.Ct. 132, 46 L.Ed.2d 99 (1965), (citing *Lebold v. Inland Steel Co.*, 125 F.2d 369, 375 (7th Cir.1941). "Estoppel arises only when a party's statement or conduct misleads another into the belief that a right will not be enforced and causes him to act to his detriment in reliance on that belief." *Old Security Life Ins. v. Continental Ill. Nat. Bank*, 740 F.2d 1384, 1392, 5 EBC 1859 (7th Cir.1984).

"Estoppel by silence," includes a change of position and reliance on the silence and an obligation or duty to speak out. See, *Chemetron Corp. v. McLouth Steel Corp.*, 522 F.2d 469, 473 (7th Cir. 1975). Where silence is the ground of the estoppel, there must be evidence that the party estopped had knowledge of the facts, the other party was ignorant of the truth and was mislead into doing that which he would not have done except for that silence. See, *Matter of Pubs, Inc. Of Champaign*, 618 F.2d 432, 438, 6 BCD 119 (7th Cir.1980); *United States v. Capital Sav. Ass'n*, 576 F.Supp. 790, 797–98 (N.D.Ind. 1983) (citing 31 CJS Estoppel §§ 1, 87 (1964). Representation of a fact necessary for estoppel may be accomplished by conduct which includes silence where there is a duty to speak. *Andsu, Inc. v. City of Kokomo (In re The Sassi Corp.)*, supra, 51 B.R. at 544 (Bkrtcy.S.D.Ind.1983).

"Judicial estoppel" is "distinct from that of equitable estoppel, applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted. Judicial estoppel looks to the connection between the litigant and the judicial system while equitable estoppel focuses on the relationship between the parties to the prior litigation." *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419, 17 BCD 1272 (3d Cir.1988), cert. denied, —— U.S. ——, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988), (citing *Scarano v. Central Railroad Co.*, 203 F.2d 510, 512–513 (3d Cir.1953)). Accord, *Dwyer v. Haynes (In re Haynes )*, 97 B.R. 1007, 1011 (9th Cir.BAP 1989) (citing inter alia, *Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 211–212 (1st Cir.1987)). Its purpose is to protect the integrity of the judicial process from intentional inconsistency. *Bruner v. Taylor (In re Taylor )*, 72 B.R. 696, 699 (Bkrtcy.E.D.Tenn.1987) (citing *Edwards v. Aetna Life Insurance Co.*, 690 F.2d 595, 598–599 (6th Cir.1982)). Accord, *In re Mitchell*, 80 B.R. 372, 378–379, 17 CBC.2d 1379 (Bkrtcy.W.D.Tex.1987); *Caro Area Services for the Handicapped v. Michigan Dept. of Transportation (In re Caro Area Services for the Handicapped )*, 53 B.R. 438, 441 (Bkrtcy.E.D. Mich.1985).

The Restatement (Second) of Judgments, § 27 (1982), defines issue preclusion as:

When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

One frequently quoted definition of claim preclusion is provided in *Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948):

The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissable matter which might have been offered

for that purpose.' *Cromwell v. Sac County,* 94 U.S. 351, 352, 24 L.Ed. 195, 197.... [W]here the second cause of action between the same parties is upon a different cause or demand, the principle of res judicata is applied much more narrowly. In this situation, the judgment in the prior action operates as an estoppel, not as to matters which might have been litigated and determined, but 'only as to those matters in issue or points controverted upon the determination of which the finding or verdict was rendered.' *Cromwell v. Sac County, supra* (94 U.S. 353, 24 L.Ed. 198).... *Sunnen, supra,* 333 U.S. at 597–598, 68 S.Ct. at 719, 92 L.Ed. at 905–906 (1948). See, *Southern Pacific Railroad Co. v. United States,* 168 US 1, 48–49, 18 S.Ct. 18, 42 L.Ed. 355, 377 (1897). See also, 1B *Moore's Federal Practice,* paragraphs 0.405, pages 175, et seq. (2d ed. 1983).

To avoid confusion, we will use claim preclusion for res judicata and issue preclusion for collateral estoppel. See, *Migra v. Warren City School Dist. Bd. of Ed.,* 465 U.S. 75, 77, n. 1, 104 S.Ct. 892, 894, n. 1, 79 L.Ed.2d 56, 59, n. 1 (1984) ("... [R]es judicata is often analyzed further to consist of two preclusion concepts: 'issue preclusion' and 'claim preclusion.' Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided.... This effect also is referred to direct or collateral estoppel.... Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar."). Id. See also, *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 376, n. 1, 105 S.Ct. 1327, 1329, n. 1, 84 L.Ed.2d 274, 278 n. 1 (1985), reh'g denied, 471 U.S. 1062, 105 S.Ct. 2127, 85 L.Ed.2d 491 (1985); *Allen v. McCurry,* 449 U.S. 90, 94, n. 5, 101 S.Ct. 411, 414 n. 5, 66 L.Ed.2d 308, 313, n. 5 (1980) ("The Restatement of Judgments now speaks of res judicata as 'claim preclusion' and collateral estoppel as 'issue preclusion.' Restatement (Second) of Judg-

ments § 74 (Tent.Draft No. 3, Apr. 15, 1976).").

Because LB & B's prior litigation against the Bank was brought in Bankruptcy Court, a Federal Court, Federal preclusion rules govern. *Matter of Energy Co-op, Inc.,* 814 F.2d 1226, 1230, 17 BCD.2d 193 (7th Cir.1987), cert. denied, 484 U.S. 928, 108 S.Ct. 294, 98 L.Ed.2d 254 (1987) (citing, Restatement (Second) of Judgments, § 87 (1982); 18 C. Wright, A. Miller, E. Cooper, *Federal Practice and Procedure,* § 4466 (1981); Degan, *Federalized Res Judicata,* 85 Yale L.J. 741, 769 (1976)).

■ For claim preclusion to apply, three elements must be met: (1) identity of parties; (2) identity of causes of action; and, (3) a final judgment on the merits. *Matter of Energy Co-op, Inc.,* supra, 814 F.2d at 1230 (7th Cir.1987) (citing, inter alia, *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981)). Accord, *Alexander v. Chicago Park Dist.,* 773 F.2d 850, 854 (7th Cir.1985), cert. denied, 475 U.S. 1095, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986); *Williams v. Duckworth,* 617 F.Supp. 597, 598–599 (D.Ind.1985).

In *Lee v. City of Peoria,* 685 F.2d 196 (7th Cir.1982), the Seventh Circuit restated the principle behind res judicata:

The doctrine of res judicata is that a final judgment on the merits in a court of competent jurisdiction bars the same parties or their privies from relitigating not only issues which were in fact raised and decided but also all other issues which could have been raised in the prior action.

*Id.,* 685 F.2d at 199. Accord, *Mandarino v. Pollard,* 718 F.2d 845, 849 (7th Cir.1983), cert. denied, 469 U.S. 830, 105 S.Ct. 116, 83 L.Ed.2d 59 (1984).

The only disputed requirement in the matter sub judice is whether there is a sufficient identity of the causes of action.

In *Alexander v. Chicago Park Dist., supra,* the Seventh Circuit devised a "same transaction" test for the identity of causes of action element of claim preclusion:

A cause of action consists of 'a single core of operative facts' which give rise to a remedy. *Mandarino v. Pollard*, 718 F.2d 845, 849 (7th Cir.1983) (operative facts were employment termination and surrounding circumstances), cert. denied, 469 U.S. 830, 105 S.Ct. 116, 83 L.Ed.2d 59 (1984); *Coward v. Colgate–Palmolive Co.*, 686 F.2d 1230, 1234–1235 (7th Cir.1982) (essential fact underlying first and second suit was seniority), cert. denied, 460 U.S. 1070, 103 S.Ct. 1526, 75 L.Ed.2d 948 (1983); *Lee [v. City of Peoria]*, 685 F.2d [196] at 200 [ (7th Cir.1982) ] (cause of action consists of single core of operative facts).

*Alexander v. Chicago Park Dist., supra*, 773 F.2d at 854 (7th Cir.1985). *Accord, Matter of Energy Co-op, Inc., supra*, 814 F.2d at 1230; *Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 593 (7th Cir.1986); *Lee v. City of Peoria, supra*, 685 F.2d 200.

There is no doubt that LB & B seeks its fees from the Bank under the same core of operative facts that resulted in an unappealed adverse judgment against them. What LB & B proposes to do now is to offer alternative equitable theories which they failed to present to us at trial or, even if those theories had been raised, preserve by direct appeal. Claim preclusion prevents us from permitting what amounts to a belated attack on our prior final unappealed judgment.

Fatal to LB & B's request for reopening of the final judgment against it is the rule that:

A mere change in the legal theory does not create a new cause of action. *Shadid v. Oklahoma City*, 494 F.2d 1267, 1268 (10th Cir.1974). See also *Harper Plastics*, 657 F.2d at 945 ('An unsuccessful party may not ... frustrate ... res judicata by cloaking the same cause of action in the language of a theory untried in the previous litigation.').

*Alexander v. Chicago Park Dist., supra*, 773 F.2d at 854. Accord, *Car Carriers, Inc. v. Ford Motor Co., supra*, 789 F.2d at 593, (citing, inter alia, *Alexander v. Chicago Park Dist., supra*, 773 F.2d at 854.)

Therefore, prior litigation acts as a bar not only to those issues which were raised and decided in the earlier litigation but also to those issues which could have been raised in that litigation.

*Car Carriers, Inc. v. Ford Motor Co., supra*, 789 F.2d at 593 (emphasis in original). Accord, *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308, 313 (1980); *Montana v. United States*, 440 U.S. 147, 153–154, 99 S.Ct. 970, 974, 59 L.Ed.2d 210, 216–217 (1979).

Even if we were to place the blame on ourselves for not deciding the prior litigation on equitable grounds, the Supreme Court in *Federated Dep't Stores, Inc. v. Moitie, supra*, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981), reminds us that mere errors by a trial court will not justify an upset of the repose created by a final unappealed judgment:

Nor are the res judicata consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case ... As this Court explained in *Baltimore S.S. Co. v. Phillips*, 274 US 316, 325, 71 L.Ed. 1069, 47 S.Ct 600 [ ] (1927), an 'erroneous conclusion' reached by the court in the first suit does not deprive the defendants in the second action 'of their right to rely upon the plea of res judicata.... A judgment merely voidable because based upon an erroneous view of the law is not open to collateral attack, but can be corrected only by a direct review and not by bringing another action upon the same [cause of action.]' We have observed that '[t]he indulgence of a contrary view would result in creating elements of uncertainty and confusion and in undermining the conclusive character of judgments, consequences which it was the very purpose of the doctrine of res judicata to avert.' *Reed v. Allen*, 286 US 191, 201, 76 L.Ed. 1054, 52 S.Ct 532 [534] 81 ALR 703 (1932).

*Federated Dep't Stores, Inc. v. Moitie, supra*, 452 U.S. 394, 398–399, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103, 109 (1981) (citations omitted).

As the Supreme Court noted:

Because res judicata may govern grounds and defenses not previously litigated, however, it blockades unexplored paths that may lead to truth. For sake of repose, res judicata shields the fraud and the cheat as well as the honest person.

*Brown v. Felsen,* 442 US 127, 132, 99 S.Ct 2205, 2209, 60 L.Ed.2d 767, 772 (1979) (refused to apply res judicata to a prior state court judgment because debtor's subsequent bankruptcy "upset the repose that would justify treating the prior state-court proceeding as final....").

## CONCLUSION

The primary responsibility for the preservation of causes of action falls on litigants and not the Courts. Consequently, the failure of the litigant to properly present and preserve all legal and equitable theories of relief available to it while litigation is underway properly attaches to the litigant. LB & B should have, but failed to present the equitable grounds it now seeks against the Bank at the prior § 506(c) hearing. Having failed to utilize properly Rules 59(e) or 60(b)(6) motions to set aside the final judgment or exercise direct appeal, LB & B has now foreclosed itself from equitable relief by the principle of claim preclusion. Accordingly,

an appropriate order will be entered and the Bank's motion to dismiss LB & B's reconsideration of the final unappealed judgment will be granted and LB & B's motion to reconsider will be dismissed. Based on the extensive issues raised by the parties, we find Rules of Practice and Procedure in Bankruptcy Rule 9011 sanctions to be inappropriate.